Filed 4/2/21  8747 Shoreham v. Bank of New York Mellon CA2/1

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| 8747 SHOREHAM, LLC,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>BANK OF NEW YORK MELLON,<br>as Trustee, etc.,<br><br>    Defendant and Appellant;<br><br>NATIONSTAR MORTGAGE LLC,<br><br>    Movant and Appellant. | B294377, B296777<br><br>(Los Angeles County<br>Super. Ct. No. BC667404) |

APPEALS from orders of the Superior Court of Los Angeles County, William Fahey, Judge.  Affirmed.

Ferguson Case Orr Paterson and Wendy C. Lascher for Plaintiff and Appellant 8747 Shoreham, LLC (case No. B296777).

Hall Griffin, Howard D. Hall, Taylor R. Dalton, Jered T. Ede, and Elena A. Leonard for Movant and Appellant Nationstar Mortgage LLC (case No. B294377).

Buchalter, Robert M. Dato and Paul A. Alarcón for Defendant, Appellant and Respondent Bank of New York Mellon, as Trustee, etc. (case Nos. B294377 & B296777).

Ferguson Case Orr Paterson, Wendy C. Lascher, John A. Hribar; Law Offices of Rodney T. Lewin and Rodney T. Lewin for Plaintiff and Respondent 8747Shoreham, LLC (case No. B294377).

Hall Griffin, Howard D. Hall and Taylor R. Dalton for Movant and Respondent Nationstar Mortgage LLC (case No. B296777).

_____

This matter involves a dispute regarding real property currently owned by 8747 Shoreham, LLC (Shoreham). The dispute has a long and tortuous procedural history spanning three separate lawsuits over the course of almost a decade. The appeals consolidated and now before this court are from one such lawsuit, brought by Shoreham against Bank of New York Mellon, as Trustee of SAMI II Trust 2006-AR7, Mortgage Pass-Through Certificates, Series 2006-AR7 (BONY), owner of a deed of trust BONY contends still encumbers the property. The suit ended in a default judgment against BONY after it and its loan servicer, Nationstar Mortgage LLC (Nationstar), failed to respond to multiple notices of the proceeding. BONY, Nationstar, and Shoreham separately appeal from three different orders the trial court issued in that suit. We affirm all three.

**BONY's Appeal (Case No. B294377):** BONY filed two motions to set aside the default judgment against it, one based on Nationstar's mistake and neglect, and another two months later based on an argument that the judgment is void. (§ 473,

2

subds. (b) & (d).)[1]  The trial court denied both motions, and BONY appeals from the court's denial of the second motion only. BONY argues the trial court improperly viewed the second motion as a renewed motion and/or motion for reconsideration under section 1008, and thus erred by denying the motion for failure to comply with section 1008's procedural requirements. Even if the trial court did err in concluding BONY's second motion was subject to section 1008, we conclude any such error was harmless, because as a matter of law, the judgment was not void.

**Nationstar's Appeal (Case No. B294377):**  The same day the trial court denied BONY's second motion to set aside, Nationstar moved to intervene in the action.  Nationstar's motion argued that the terms of BONY's and Nationstar's loan servicing agreement give Nationstar a direct interest in the property, the deed of trust, and the outcome of the litigation, and that, if permitted to intervene, Nationstar would seek an equitable lien on the property and move to set aside the default judgment as void.  The court denied Nationstar's motion to intervene, and Nationstar appealed.  Even if the trial court abused its discretion in denying the motion, any such error could not prejudice Nationstar, as Nationstar could not have obtained an equitable lien or successfully moved to set aside the judgment as void.

**Shoreham's Appeal (Case No. B296777):**  Finally, Shoreham sought to recover attorney fees under a provision of the deed of trust and Civil Code section 1717.  The trial court denied Shoreham's motion for fees, concluding that Civil Code

---

[1] Unless otherwise indicated, all statutory references are to the Code of Civil Procedure.

section 1717 did not apply to the deed of trust.  We agree that the deed does not contain an applicable attorney fees provision to which Civil Code section 1717 applies.  We thus need not address Shoreham's arguments as to why Shoreham may rely on an agreement to which it is not a party as a basis for fees.

Accordingly, we affirm the orders on appeal in case Nos. B294377 and B296777.

## OVERVIEW OF FACTS AND PROCEEDINGS RELEVANT TO ALL THREE APPEALS[2]

In May 2004, Aziza Shahi held sole title to residential property located at 8747 Shoreham Drive in West Hollywood (the property) and sold a 50 percent interest in the property to City Breeze LLC and Neutraceutical Services of America (collectively, City Breeze).  At the time Shahi sold City Breeze this interest, the property was encumbered with a mortgage of about $1.3 million.

In 2006, Shahi repaid the mortgage by obtaining a $2.36 million loan from America's Wholesale Lender, secured by a deed of trust recorded against the property in 2006 (the deed of trust). The deed of trust identified Shahi as the sole borrower, America's Wholesale Lender as the sole lender, Recontrust Company (Recontrust) as the trustee, and Mortgage Electronic Reservation Systems, Inc. (MERS) as the beneficiary.

---

[2] Factual and procedural background relevant to all three appeals consolidated before this court are presented in this section.  As necessary, we provide additional facts relevant to Nationstar's appeal regarding its motion to intervene and Shoreham's appeal regarding its attorney fees motion in the respective sections discussing those appeals below.

4

Shahi stopped making payments on the loan secured by the deed of trust in approximately 2010.

On June 2, 2010, Recontrust recorded two documents regarding the property:  A "notice of trustee's sale" of the property based on Shahi being in default, and an "assignment of deed of trust," in which MERS assigned "all beneficial interest under the certain deed of trust" to BONY.  (Capitalization omitted.)

### A.    *The First Lawsuit:  The City Breeze Action*

A month later, City Breeze filed an action against a number of financial entities[3]—*not* including BONY—all of which City Breeze alleged "claim[ed] a beneficial interest in the deed of trust" and "related to each other in some capacity."  City Breeze later added Shahi as a defendant as well.  City Breeze alleged that Shahi's signature on the deed of trust was a forgery and that City Breeze had no knowledge of the deed or loan.  City Breeze sought to block the noticed foreclosure sale of the property and obtain an equitable lien on the property in the amount City Breeze had paid to Shahi in purchasing City Breeze's 50 percent interest.  The court issued a preliminary injunction in August 2010 preventing Recontrust from moving forward with the foreclosure.

---

[3] The financial entities named as defendants included Countrywide Home Loans, Inc. (Countrywide), BAC Home Loans Servicing, LP (BAC), Bank of America, N.A. (BOA), and America's Wholesale Lender (collectively, the non-BONY financial defendants).

5

### 1. *Initial default judgments in the City Breeze action*

Shahi and the non-BONY financial defendants failed to respond to the City Breeze action, and the trial court entered defaults against them. In April 2011, the trial court entered a permanent injunction prohibiting Shahi and the non-BONY financial defendants from enforcing the deed of trust. That judgment also awarded City Breeze a $1.84 million special statutory lien under Civil Code section 3050, concurrent with an equitable lien on the property in the same amount effective May 24, 2004, and permitted City Breeze to foreclose on that lien.

Before City Breeze could foreclose on the lien, however, the non-BONY financial defendants appeared. In October 2011, the court granted their motion to set aside the default judgment as against them. The default judgment against Shahi remained, as did the judgment lien.

### 2. *Non-BONY financial defendants' efforts in the City Breeze action*

In January 2012, Fidelity National Law Group (the Fidelity firm), counsel provided through the non-BONY financial defendants' title insurer (Fidelity), began representing the non-BONY financial defendants in the City Breeze action. Through their new counsel, the non-BONY financial defendants raised concerns about preserving the deed of trust in the wake of any sale to foreclose on City Breeze's equitable lien. But these concerns were on behalf of BOA and Countrywide, two of the non-BONY financial defendants whom the Fidelity firm erroneously believed to be the current beneficial owners of that deed.

The non-BONY financial defendants indicated in a brief to the court that they "[would] not oppose [a] sale" to foreclose on City Breeze's lien "so long as [City Breeze] agree[d] to and compl[ied] with" two conditions:  "[t]hat [City Breeze] acknowledge that [the non-BONY financial] defendants['] deed of trust [was] senior to [City Breeze's] interest in the subject property" and "[t]hat the sale of the dwelling [be] subject to the [deed of trust] held by [the non-BONY financial] defendants." (Capitalization omitted.)

In April 2012, the non-BONY financial defendants and City Breeze filed a stipulation in which the non-BONY financial defendants agreed, in light of their and City Breeze's efforts to reach a settlement, that City Breeze could go forward with a foreclosure sale to collect on its equitable lien "as against . . . Shahi and as against the . . . property on condition that if any third party should purchase the . . . property at the sheriff's sale, [City Breeze] will deposit any and all monies received from such third party" into an escrow account "to be distributed only upon direction of the court."  (Capitalization omitted.)  Notably, unlike the non-BONY financial defendants' brief to the court, the stipulation did *not* include any language regarding the seniority of the deed of trust or any agreement as to the continuing viability of the deed.

### 3. *Sheriff's sale of the property triggers BONY's involvement in the City Breeze action*

The court ordered that the property be sold "in the manner provided in . . . Sections 701.510–701.680," the sections of the California's Enforcement of Judgments law addressing the sale of property as a means of collection.  (See §§ 680.010–724.260.)

7

As to the "order of priority" for proceeds from that sale, the order required that proceeds go first to pay costs, and that, per the parties' stipulation, should a third party purchase the property, the remainder of the proceeds would be placed in escrow. The order did not address the deed of trust or relative priority of City Breeze's equitable lien in any way.

Because BONY was identified as a lienholder in the county records regarding the property, BONY received notice of the sheriff's sale to collect on City Breeze's equitable lien. BONY thereby became aware of the City Breeze action. Like BOA, BONY's title insurer was Fidelity, and BONY appeared in the City Breeze action through the Fidelity firm, which was already representing the non-BONY financial defendants in the action. At this point, the Fidelity firm became aware that BONY was the current beneficial owner of the deed of trust.

Accordingly, on October 12, 2012, the Fidelity firm filed a notice of absence of real party in interest and notice of lis pendens on BONY's behalf. The Fidelity firm also contacted City Breeze's counsel to discuss the lack of BONY's involvement in the proceedings and BONY's view that City Breeze's default judgment should therefore be vacated. City Breeze nevertheless went forward with the sheriff's sale of the property a few days later.

BONY attended the October 17, 2012 sale and passed out copies of the lis pendens, after which all of the third party potential buyers present chose not to bid on the property. BONY likewise chose not to bid on the property. City Breeze purchased the property for $2,100,000 through a credit bid. City Breeze recorded a sheriff's deed shortly after the sale. The deed reflected a sale to City Breeze under a writ of execution on a

judgment entered on April 26, 2011 in favor of City Breeze and against Shahi.

### 4. *BONY's efforts to intervene and undo the City Breeze action judgment and resulting sheriff's sale*

On October 26, 2012, BONY sought to intervene in the City Breeze action as a real party in interest vis-à-vis the deed of trust, and in that capacity filed a motion to set aside both the default judgment against Shahi and the resulting order of sale. BONY's motion argued that the default judgment against Shahi was void, because the court lacked jurisdiction to enter a judgment absent an indispensable party (BONY), and because the judgment substantially affected the right of a nonparty (BONY), such that the court had acted outside the bounds of its jurisdiction. BONY further argued that judicial action pursuant to a void judgment is likewise void, such that both the order permitting the sheriff's sale and the judgment must be set aside.

The court denied the motion. In so doing, the court found "most significant[ ]" that neither BONY nor its title insurer Fidelity had taken prompt action to protect BONY's interest in the deed of trust. "Fidelity is [BONY's] title insurer. And on April 6, 2012, Fidelity's attorney . . . , who . . . is with [the Fidelity] firm, stipulated to a foreclosure sale on behalf of [the non-BONY financial defendants]. So it appears to me that any adverse action suffered by [BONY] was due to either, one, the actions of its agent and their attorneys; or, two, [BONY's] failure, and/or its title company's failure to timely appeal the [default judgment against Shahi]." The court expressed concern that BONY had failed to take action in response to legal notices of the sheriff's sale—noting specifically that it had not, for example,

9

filed an ex parte application for a restraining order to stop the sale—despite BONY having received proper notice of the sale.

BONY did not appeal the court's denial of its motion to set aside as void the default judgment and the resulting sale order. (See *Gassner v. Stasa* (2018) 30 Cal.App.5th 346, 356 [denial of motion to set aside judgment is appealable].)

The court did, however, later permit BONY to file a complaint in intervention seeking effectively the same relief it had sought through the motion to set aside the default judgment. Namely, BONY's September 2013 complaint in intervention sought a judicial declaration that the lien on the property under the deed of trust was senior to City Breeze's judgment lien. Anticipating an argument from City Breeze that the judgment lien extinguished the deed of trust, the complaint also sought, in the alternative, an equitable lien on the property senior to all other liens.

### 5. *Shahi appearance and transfer of the property to City Breeze*

Meanwhile, Shahi appeared in the City Breeze action, and ultimately obtained a September 2014 order setting aside the default judgment against her based on lack of proper service. As a result of this order, the judgment on which the sheriff's sale was based was completely set aside. The court did not, however, set aside the order for sheriff's sale or otherwise call into question City Breeze's ownership of the property resulting therefrom.

Instead, City Breeze and Shahi entered into a court-approved stipulation in October 2014, pursuant to which City Breeze conveyed the property back to Shahi via quitclaim deed.

10

### 6. *BONY motion for judgment on the pleadings*

BONY moved for judgment on the pleadings as to City Breeze's complaint (but not on BONY's complaint in intervention). The court granted the motion. In so doing, the court did *not* determine that the sheriff's sale was invalid or void for any reason. Rather, the court found that City Breeze was aware of a pre-existing encumbrance on the property when City Breeze purchased its 50 percent interest, and the court took judicial notice of the fact that BONY was the current beneficial owner of the deed of trust securing the loan used to pay off that pre-existing encumbrance. The court determined that equity required that BONY should receive an equitable lien in the amount of the encumbrance on the property at the time City Breeze purchased its interest therein, and that this lien be in a superior position to any other liens.

The court found that the amount of the encumbrance on the property at the time City Breeze purchased its 50 percent interest was $1.3 million, but required the parties to submit additional briefing to determine the exact amount "due and owing on the BONY senior [equitable] lienholder interest." This never occurred, however, due to the successful settlement of all claims between the parties that followed.

### 7. *Settlement and dismissal of all claims in City Breeze action*

Specifically, before any further briefing or proceedings took place to effectuate the court's ruling on BONY's motion for judgment on the pleadings, City Breeze settled with BONY and the non-BONY financial defendants and dismissed City Breeze's causes of action against them with prejudice. BONY

11

then dismissed its complaint in intervention against City Breeze with prejudice, representing to the court that "the issues in that pleading were adjudicated in the motion for judgment on the pleadings decision arising out of [City's Breeze's] complaint against BONY." (Capitalization omitted.) This resulted in a final dismissal of all claims between all parties (including Shahi) in the City Breeze action in August 2017.

Thus, there was never a final judgment between City Breeze and BONY or any of the non-BONY financial defendants in the City Breeze action. Nor did the "adjudicat[ion]" on which BONY apparently relied in choosing to dismiss its complaint in intervention ever become part of a final judgment.

### 8. *Transfers of the property by Shahi*

On March 15, 2017, the attorney who represented Shahi in the City Breeze action recorded two quitclaim deeds, through which Shahi purported to have transferred the entirety of her interest in the property on July 22, 2014. These deeds reflect that, on that date, Shahi "grant[ed]" her former daughter-in-law a 60 percent interest in the property and "grant[ed]" Shoreham a 40 percent interest in the property. Both deeds were captioned "quitclaim deed." (Capitalization omitted.)

It is undisputed that, at the time of these purported transfers, Shahi held no interest in the property.

### B. *The Second Lawsuit: The Shoreham Action*

Having received no payments on the loan secured by the deed of trust since approximately 2010, BONY reinstated its efforts to foreclose on the property and collect on the original $2.36 million loan to Shahi it secured. In response, in July 2017, Shoreham initiated the action underlying this appeal (the

12

Shoreham action).[4] Shoreham's complaint sought a declaration that the deed of trust was void because Shahi's signature thereon had been forged, and/or a declaration that the deed of trust had been extinguished by the foreclosure sale. Shoreham further alleged that it was a bona fide purchaser of the property via the sheriff's sale in 2012, "without notice that [BONY] continued to allege that the [deed of trust] was a current encumbrance on the property and not extinguished by the [sheriff's sale]." (Capitalization omitted.)

A month after Shoreham filed the Shoreham action, Shahi executed a "grant deed" purporting to transfer 100 percent of her interest in the property to Shoreham.[5]

## C. *Nationstar's Errors and Resulting Default Judgment in Shoreham Action*

From April 2014 to the present, Nationstar has acted as the servicer of the deed of trust. As such, Nationstar is contractually obligated to handle loan-related litigation on BONY's behalf. Nationstar made a series of decisions in the way it handled the Shoreham litigation that ultimately led to entry of default against BONY in that action.

When BONY received a notice of lis pendens regarding the Shoreham action, it sent the document to Nationstar and requested that, per the servicing agreement between BONY

_____

[4] Shoreham was (and is) represented by the same attorney who represented Shahi in the City Breeze action, which attorney is also an organizer of Shoreham and the manager and agent for service of process for the company.

[5] A deed correcting the property description in the August 2017 deed was executed and recorded in September 2018.

13

and Nationstar, Nationstar defend and indemnify BONY in the matter.  Nationstar indicated that it would do so.  The service of the summons and complaint were likewise forwarded to Nationstar for handling.  Because Nationstar incorrectly assumed these documents related to the concluded City Breeze action, Nationstar failed to take any action in response to them.  As a result, BONY did not respond to the complaint in the Shoreham action.

Based on BONY's failure to respond, Shoreham submitted to the court several requests for entry of default.  The court rejected the first five of these, based on inaccuracies and inconsistencies in the names of the parties.  The trial court, however, granted Shoreham's sixth such request (which corrected all of these inaccuracies), and entered a default judgment against BONY on November 14, 2017.

All six of Shoreham's requests for default were properly served on BONY's agent for service of process, as was the default judgment prove up package after the sixth request was granted.  BONY forwarded them all to Nationstar for handling, but Nationstar took no action in response.  At one point, an agent for Nationstar contacted Shoreham's counsel with a question related to Nationstar's mistaken belief that the Shoreham requests for default involved a tax lien issue.  Although the details of this conversation are a subject of some dispute, it is clear that Shoreham's counsel did not clarify the nature or status of the Shoreham action, except to the extent he stated there was no property tax lien issue.  Relying on these representations, Nationstar closed the matter.  BONY emailed Nationstar several times to inquire about the status of the Shoreham action and the numerous documents in the Shoreham action that BONY had

14

been forwarding to Nationstar, but took no further action when Nationstar failed to respond.

On January 18, 2018, the trial court entered a default judgment against BONY, finding that the foreclosure sale was valid and final, and consequently that the deed of trust had been extinguished by operation of law. The trial court further enjoined BONY from conducting any foreclosure sale with respect to the property based on the deed of trust.

### D. *The Third Lawsuit: The BONY Action*[6]

In May 2018, while attempting to institute foreclosure proceedings on the property under the deed of trust, Nationstar first became aware of the default judgment against BONY in the Shoreham action. BONY and Nationstar then initiated a new lawsuit against Shoreham (the BONY action) with the goal "to ultimately establish that the 2006 deed of trust remains valid."

The thrust of BONY and Nationstar's complaint was that the Shoreham action and default judgment therein were the result of fraud by Shoreham that deprived BONY of its rights under the deed of trust. BONY and Nationstar alleged that Shoreham's complaint in the Shoreham action contained fraudulent allegations—specifically, allegations that the sheriff's sale in the City Breeze action had extinguished the deed of trust—and that the judgment in the second action was therefore void. The complaint included causes of action for fraud, cancellation of instrument, slander of title, declaratory relief, and quiet title. BONY and Nationstar sought, inter alia, a

---

[6] Shoreham's May 19, 2020 request for judicial notice of documents related to the third lawsuit, which BONY and Nationstar opposed, is hereby granted.

15

declaration that the judgment in the Shoreham action was void, that the 2012 sheriff's sale did not extinguish the deed of trust, and that the deed of trust is still a valid first-priority encumbrance on the property.

### E. *BONY's June 2018 Motion to Set Aside the Default Judgment in Shoreham Action as the Result of Attorney Mistake*

Less than two weeks after BONY and Nationstar filed the BONY action seeking a declaration that the Shoreham action judgment was based on fraud, BONY *also* moved in the Shoreham action to set aside that same judgment on a different basis. Specifically, BONY moved to set aside the default judgment in the Shoreham action under section 473, subdivision (b), which allows a court to "relieve a party or his or her legal representative from a judgment . . . taken against him or her through his or her mistake, inadvertence, surprise, or excusable neglect." (§ 473, subd. (b).)

BONY argued that Nationstar was contractually obligated to defend BONY in the Shoreham action, so Nationstar was acting as BONY's attorney when its mistake and neglect led to the default judgment. The court denied the motion. The court explained that Nationstar was "a servicer that [BONY] [was] trying to morph into the role of an attorney," and that Nationstar's obligation to defend BONY created a relationship most analogous to that of an insured and its insurer, not an attorney and her client. The court further noted that even if Nationstar had been acting as BONY's attorney, Nationstar's conduct constituted "malfeasance . . . below the standard of the profession in such a dramatic way that [section] 473 relief would

16

not be proper." BONY did not appeal the court's denial of the motion.

**F.** ***Shoreham's Motion to Strike the Complaint in the BONY Action***

At the same hearing during which the court denied BONY's section 473, subdivision (b) motion to set aside the default judgment in the Shoreham action, the court ruled on a special motion to strike under section 425.16 (an anti-SLAPP motion), through which Shoreham sought dismissal of the complaint in the BONY action. Shoreham's anti-SLAPP motion argued the claims in the BONY complaint arose from Shoreham filing a complaint and obtaining a judgment in court, which constitute protected " 'petitioning activity,' " and that the litigation privilege absolutely precludes liability based on damages resulting from such activity.[7]

The court granted Shoreham's motion and dismissed the BONY action with prejudice. The court's ruling relied entirely on the litigation privilege to satisfy both the first and second

---

[7] An anti-SLAPP motion requires a court to engage in a two-pronged analysis. First, the court determines whether the complaint and/or the claims the movant seeks to strike "aris[e] from" alleged protected free speech or petitioning activity. (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 396.) If so, the burden shifts to the plaintiff to establish in the second prong of the analysis that any such claims are legally sufficient in "a summary-judgment-like procedure." (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 278, 291.) Any claims and/or allegations as to which the plaintiff fails to make a prima facie showing should be stricken. (*Baral v. Schnitt, supra*, at p. 396.)

prongs of the anti-SLAPP statute.[8]  Judgment was entered in Shoreham's favor on August 20, 2018.  BONY did not appeal.

### G.	*BONY's September 2018 Motion to Set Aside the Default Judgment in the Shoreham Action as Void*

Less than a month later, BONY filed another motion to set aside the judgment in the Shoreham action, this time seeking such relief under section 473, subdivision (d) and on the basis that the judgment was void.  The motion argued that the judgment was void for several reasons, only two of which BONY raises on appeal.  First, BONY argued that the 2012 sheriff's sale was void, so the Shoreham action judgment was likewise void, because it is premised on allegations that the deed of trust was extinguished at the (void) sheriff's sale.  As to why the 2012 sheriff's sale was void, BONY's motion presented the same bases that BONY had raised in BONY's motion to set aside as void both the sheriff's sale and the default judgment in the City Breeze action years earlier:  that the default judgment in the City Breeze action was void for failure to involve an indispensable party (BONY), and a sale resulting from such a void (and later set aside) judgment is likewise a judicial nullity.  Second, BONY's motion argued that Shoreham did not have standing to bring the Shoreham action, and that this rendered

---

[8] Specifically, the court explained that "[t]he gravamen of [the] complaint is defendants allege fraud in drafting and filing [of a lawsuit] . . . .  The actions of [Shoreham] in filing the earlier case are absolutely protected by the litigation privilege.  So the first prong of the analysis is met.  And according to [*Rusheen v. Cohen* (2006) 37 Cal.4th 1048], that also answers the [second] prong of the anti-SLAPP analysis."

18

judgment in the action void.  At the hearing on the motion, BONY explained it had not previously raised these arguments because BONY's new counsel had not yet secured many of the relevant documents from the City Breeze action at the time BONY made its first motion to set aside.

The court concluded that BONY's motion was a motion for reconsideration under section 1008, because it sought the same relief as the motion BONY had filed just a few months earlier (namely, an order setting aside the Shoreham action judgment). The court denied the motion on the basis that it did not meet the requirements set forth in section 1008.  The court found it "especially problematic because all of the evidence relied on in support of this new motion [had] been well known to BONY for many years," so BONY had not shown "new or different facts, circumstances, or law" of the type section 1008 requires.  (§ 1008, subds. (a) & (b).)

## DISCUSSION

### BONY'S APPEAL FROM THE TRIAL COURT'S DENIAL OF BONY'S MOTION TO SET ASIDE THE SHOREHAM ACTION JUDGMENT AS VOID  (APPEAL NO. B294377)

BONY appeals from the trial court's denial of BONY's September 2018 motion to set aside the judgment in the Shoreham action as void.  BONY argues that the trial court incorrectly concluded section 1008 applies to BONY's September 2018 motion.  Even if BONY is correct that the trial court erred in concluding that BONY's September 2018 motion was subject to section 1008, any such error would be harmless.  As a matter of law, the court could not have granted BONY's September 2018 motion on either of the bases BONY raises on appeal. Accordingly, and for reasons we discuss in greater detail below,

19

we affirm the court's denial of BONY's September 2018 motion to set aside the judgment in the Shoreham action.

When, as is the case here, a motion to vacate a default judgment as void is filed beyond the six-month deadline in section 473, the court must look to the rules that govern collateral attacks on judgments. (*Becker v. S.P.V. Construction Co.* (1980) 27 Cal.3d 489, 492–493 (*Becker*).) Under those rules, the court could only have concluded the Shoreham action judgment was void if, at the time the judgment was issued, "the court lacked personal or subject matter jurisdiction." (*Rochin v. Pat Johnson Manufacturing Co.* (1998) 67 Cal.App.4th 1228, 1239; accord, *People v. American Contractors Indemnity Co.* (2004) 33 Cal.4th 653, 660–661; *Abelleira v. District Court of Appeal* (1941) 17 Cal.2d 280, 288.) Put differently, the court must have lacked jurisdiction to issue the judgment in the "fundamental sense." (*Ibid.*; accord, *Fireman's Fund Ins. Co. v. Workers' Comp. Appeals Bd.* (2010) 181 Cal.App.4th 752, 767.) A legally erroneous judgment is not void, as long as the court had fundamental jurisdiction to issue it. (*Pajaro Valley Water Management Agency v. McGrath* (2005) 128 Cal.App.4th 1093, 1101 (*Pajaro Valley Water*).)

On appeal, BONY argues the Shoreham judgment is void for two distinct reasons: (1) Shoreham lacked standing to bring the Shoreham action, and (2) the 2012 sheriff's sale was void and thus could not, as the Shoreham action complaint alleges, extinguish the deed of trust. As a matter of law, neither of these, even if true, could deprive the court of fundamental jurisdiction to issue the Shoreham action judgment. Thus, the court did not commit reversible error in declining to consider the merits of

BONY's motion to set aside the Shoreham action judgment as void.

### A.    *The Shoreham Judgment Is Not Void Based on Lack of Standing*

BONY argues that the Shoreham action judgment is void because Shoreham did not have standing to prosecute it,[9] and that "[a] lack of standing is a jurisdictional defect to an action that mandates dismissal." (*Cummings v. Stanley* (2009) 177 Cal.App.4th 493, 501.)

Standing is indeed "a jurisdictional issue that . . . must be established in some appropriate manner." (*Waste Management of Alameda County, Inc. v. County of Alameda* (2000) 79 Cal.App.4th 1223, 1232, disapproved on another ground in *Save the Plastic Bag Coalition v. City of Manhattan Beach* (2011) 52 Cal.4th 155, 160.)  But something that is "jurisdictional" does not necessarily go to a court's *fundamental* jurisdiction.  " 'The term "jurisdiction," "used continuously in a variety of situations, has so many different meanings that no single statement can be entirely satisfactory as a definition." [Citation.]  Essentially, jurisdictional errors are of two types.  "Lack of jurisdiction in its most fundamental or strict sense means an entire absence of power to hear or determine the case, an absence of authority over the subject matter or the parties." [Citation.]  When a court lacks jurisdiction in a fundamental

_____

[9] Specifically, BONY argues Shoreham lacked standing because it did not have an ownership interest in the property at any point during the Shoreham action.  We need not reach the parties' arguments on this point, however, for reasons we discuss above.

21

sense, an ensuing judgment is void, and "thus vulnerable to direct or collateral attack at any time." (*Barquis v. Merchants Collection Assn.* (1972) 7 Cal.3d 94, 119 . . . .)' " (*County of Los Angeles v. Harco National Ins. Co.* (2006) 144 Cal.App.4th 656, 661.)

Standing does not concern the court's fundamental jurisdiction to hear a case; it concerns the party's authority to invoke the court's jurisdiction. " ' "The fundamental aspect of standing is that it focuses on the party seeking to get his [or her] complaint before a . . . court, and not [on] the issues he [or she] wishes to have adjudicated." [Citations.]' 'The issue of standing is determined by the courts as a matter of policy. In large measure it depends on the fitness of the person to raise the issues.' " (*Chiatello v. City and County of San Francisco* (2010) 189 Cal.App.4th 472, 481.) Thus, even if Shoreham lacked standing to invoke the court's jurisdiction, such lack of standing would not rob the court of fundamental jurisdiction in the Shoreham action, and would not provide a basis for voiding the judgment resulting therefrom.

On reply, BONY argues that, because " '[f]undamental jurisdiction cannot be conferred by waiver, estoppel, or consent' " (*People v. Lara* (2010) 48 Cal.4th 216, 225), and standing likewise cannot be conferred by these means, standing is an issue that goes to fundamental jurisdiction. That a party may not obtain a sufficient interest in litigation to prosecute a claim via waiver or consent does not render the court without power to adjudicate that claim. Indeed, although a complaint by a plaintiff who lacks standing is subject to a demurrer, such lack of standing "is not necessarily fatal to continuation of the action" (*CashCall, Inc. v. Superior Court* (2008) 159 Cal.App.4th 273, 287), because "courts

22

have permitted plaintiffs who have been determined to lack standing, or who have lost standing after the complaint was filed, to substitute as plaintiffs the true real parties in interest." (*Branick v. Downey Savings & Loan Assn.* (2006) 39 Cal.4th 235, 243.) If a plaintiff's lack of standing divested the court of fundamental jurisdiction, the court would have no authority to permit such amendment.

## B. *The Shoreham Action Judgment Is Not Void Even if the 2012 Sheriff's Sale Was Void*

BONY next argues that the 2012 sheriff's sale is void on several bases.[10] According to BONY, because Shoreham's complaint in the Shoreham action is premised on allegations involving that purportedly void 2012 sheriff's sale, the default judgment on Shoreham's complaint is void as well.

We need not determine whether the 2012 sheriff's sale was void, because even assuming it was, this would not render the judgment in the Shoreham action void. BONY's argument to the contrary is, at base, that BONY can disprove key factual allegations in the Shoreham action complaint regarding the sheriff's sale, and/or that the complaint fails to state a claim on which relief can be granted, and/or that BONY could assert winning affirmative defenses based on the sheriff's sale being void. These are all bases on which we might conclude that the

---

[10] On a high level, those bases are as follows: (1) the default judgment against Shahi in the City Breeze action that ultimately resulted in the sheriff's sale was void for failure to join BONY as an indispensable party, and was ultimately set aside, and (2) a foreclosure sale cannot affect interests in the foreclosed upon property belonging to those not party to the foreclosure proceedings.

23

Shoreham action judgment is *wrong*—not that it is void. (See *Pajaro Valley Water, supra,* 128 Cal.App.4th at p. 1101 [legally erroneous action "beyond the sphere of action prescribed by law" is voidable, not void].) "[A] failure to state a cause of action [citation], insufficiency of evidence [citation], . . . and mistake of law" are "nonjurisdictional errors for which collateral attack will not lie" because they "[do] not reach the *power* of the court to act." (*Armstrong v. Armstrong* (1976) 15 Cal.3d 942, 950–951.) The court had the power to issue the judgment it did in the Shoreham action, because the court had jurisdiction over the parties and the subject matter of the Shoreham complaint, the complaint apprised BONY of the nature of Shoreham's claim, and the judgment did not award relief beyond that sought in the complaint. (See *Falahati v. Kondo* (2005) 127 Cal.App.4th 823, 830 ["[a] default judgment is void if the trial court lacked jurisdiction over the parties or the subject matter of the complaint or if the complaint failed to 'apprise[ ] the defendant of the nature of the plaintiff's demand,' or if the court granted relief which it had no power to grant," fn. omitted]; accord, *Molen v. Friedman* (1998) 64 Cal.App.4th 1149, 1157.) BONY does not and cannot argue to the contrary.[11]

_____

[11] Moreover, the logic of BONY's argument that a void 2012 sheriff's sale means a void Shoreham action judgment is that the Shoreham complaint relies solely on allegations that BONY's deed of trust was extinguished at the foreclosure sale in order to establish that the deed of trust no longer encumbers the property. But the complaint *also* alleges that the deed of trust contains a forged signature and is not a valid encumbrance on that basis as well. Shoreham raises this argument in its brief, and BONY offers no rebuttal. Thus, even if failure to state a

BONY's argument is also fundamentally at odds with the fact that, by defaulting in the Shoreham action, BONY *admitted* all the well-pleaded allegations in the complaint (*Kim v. Westmoore Partners, Inc.* (2011) 201 Cal.App.4th 267, 281), which include the allegations regarding the 2012 sheriff's sale, as BONY now claims these allegations are untrue, not improperly pleaded. Nor can BONY argue it was unfairly denied the opportunity to disprove the allegations in the Shoreham complaint, as it did not appeal the court's denial of its section 473, subdivision (b) motion to set aside the default as the result of attorney or party mistake.

Finally, we reject the implication in BONY's arguments that we should reach a different conclusion in order to avoid forfeiture and facilitate a decision on the merits, something the law generally favors. Over the long and tortuous course of this dispute, BONY had at least two opportunities to raise the exact argument it raises now regarding the 2012 sheriff's sale. It declined to fully utilize either. Namely, in the City Breeze action, BONY moved under section 473, subdivision (d) to set aside as void both the City Breeze action judgment and the order for the sheriff's sale resulting therefrom, basing both requests on the City Breeze judgment being void for failure to join an indispensable party, BONY. This is, of course, largely the same basis BONY now cites for why the 2012 sheriff's sale is void. The court denied the motion, and BONY did not appeal. The court later permitted BONY to file a complaint in intervention in the

claim could provide a basis for voiding the judgment, were one to strike the allegations regarding the foreclosure sale from the Shoreham complaint, it could still allege a factual basis for the relief it seeks.

City Breeze action that expressly sought a declaration about the continuing validity of the deed of trust following the sheriff's sale, based on allegations that that sale was void—again, the same argument BONY now raises on appeal. BONY chose to dismiss this complaint with prejudice as part of a settlement with City Breeze. In doing so, BONY stipulated that the issues raised in its intervention complaint had been sufficiently adjudicated via the court's order granting BONY's motion for judgment on the pleadings on *City Breeze*'s complaint, but that order never became part of a final judgment. There is nothing inequitable about BONY being denied yet another such opportunity at the last minute, particularly when, in order to afford BONY such an opportunity, we would need to ignore longstanding maxims of what does and does not have the very drastic effect of rendering a final judgment a legal nullity.

## NATIONSTAR'S APPEAL FROM DENIAL OF NATIONSTAR'S MOTION TO INTERVENE (APPEAL NO. B294377)

### A. *Additional Facts Relevant to Nationstar's Appeal*

#### 1. *Servicing agreement*

As noted, from April 2014 to the present, Nationstar has acted as the servicer of the 2006 deed of trust. Nationstar's rights, authority, and obligations as the loan servicer are set forth in an agreement originally executed by Nationstar's and BONY's respective predecessors in interest (the servicing agreement), a redacted version of which is included in the record on appeal. The servicing agreement required Nationstar to, inter alia, collect monthly mortgage payments for BONY from the borrower, deposit them in a custodial account, and remit

26

them to BONY, less a servicing fee, on a monthly basis. It further obligated Nationstar to make monthly advances to BONY equal to any delinquent mortgage payments, and to make timely payments of all taxes and insurance on the property, should the borrower fail to do so. In the event that such advances and/or payments on BONY's behalf exceed the amount Nationstar collected, Nationstar is entitled to reimbursement from available funds "prior to the rights of [BONY] to receive any funds," and may deduct the shortfall from its monthly remittances to BONY. In the event that the borrower defaults on the loan, the servicing agreement permits Nationstar to foreclose on the loan on BONY's behalf—unless BONY objects—and to collect the proceeds from such foreclosure on BONY's behalf and deposit them in the custodial account.

A document purporting to assign the deed of trust to Nationstar was publicly recorded on September 30, 2013. Although Nationstar relies on that document to support certain of its arguments on appeal, it is undisputed that BONY, not Nationstar, is the owner of the loan and the beneficiary of the deed of trust. Nationstar's sworn declaration in support of its motion to intervene admitted this, and Nationstar has repeatedly represented that it is the servicer of the loan secured by the deed of trust, acting on BONY's behalf pursuant to the servicing agreement. Moreover, Nationstar refuted having any interest in the deed of trust when opposing Shoreham's motion for attorney fees discussed below, describing the assignment as "a wild assignment to Nationstar [that] does not magically transform it from the servicer of the loan into the loan's owner." (Capitalization omitted.)

### 2. *Nationstar's motion to intervene in the BONY action*

Three months after Nationstar first became aware of the Shoreham action, it filed a motion to intervene therein. During the three months Nationstar waited to file that motion, BONY was litigating the two requests to set aside the default judgment in the Shoreham action discussed above. Immediately following the trial court's denial of BONY's second motion to set aside— indeed, later that same day—Nationstar filed its motion to intervene. Nationstar's motion argued it should be allowed to intervene under both the mandatory and discretionary provisions of governing intervention.[12] (See § 387, subds. (b) & (d).)

The court denied Nationstar's motion as untimely, and because the court found Nationstar's interests were adequately represented by BONY. The court also concluded that Nationstar

---

[12] Mandatory intervention is governed by section 387, subdivision (d), which provides, inter alia, that "[t]he court shall, upon timely application, permit a nonparty to intervene in the action or proceeding if . . . [¶] . . . [¶] . . . [t]he person seeking intervention claims an interest relating to the property or transaction that is the subject of the action and that person is so situated that the disposition of the action may impair or impede that person's ability to protect that interest, unless that person's interest is adequately represented by one or more of the existing parties." (§ 387, subd. (d)(1)(B).) The court also has discretion to permit a nonparty to intervene in litigation pending between others, provided that the nonparty has a direct and immediate interest in the litigation; the intervention will not enlarge the issues in the case; and the reasons for intervention outweigh any opposition by the existing parties. (See § 387, subd. (d)(2); *Truck Ins. Exchange v. Superior Court* (1997) 60 Cal.App.4th 342, 346.)

did not have a direct interest in the Shoreham action, as required for discretionary intervention, because Nationstar was "merely an agent hired to service the loan," so a refusal to permit intervention would not impede Nationstar's ability to enforce any rights it had under the servicing agreement. Finally, the court concluded that intervention was not warranted because it would reopen a case after judgment had been entered and would necessarily enlarge the issues to be litigated. Nationstar appealed.

### B. *Any Error in the Trial Court's Denial of the Motion to Intervene Could Not Have Prejudiced Nationstar*

On appeal, Nationstar argues the court erred in denying its request for intervention. Even assuming, without deciding, that the trial court abused its discretion in denying this request (see *Sutter Health Uninsured Pricing Cases* (2009) 171 Cal.App.4th 495, 512 [denial of motion to intervene reviewed for abuse of discretion]), any such error was not prejudicial, because neither of the actions Nationstar indicates it would take, were it permitted to intervene, could secure Nationstar the relief it seeks.

According to Nationstar, because Shahi failed to make her mortgage payments and tax payments on the property, Nationstar advanced "hundreds of thousands of dollars to BONY, pursuant to the servicing agreement" between 2014 and 2017. (Capitalization omitted.) Nationstar identifies two ways in which, if permitted to intervene, Nationstar could seek to recoup this advanced amount. First, Nationstar argues it would move to set aside the Shoreham action judgment and ultimately confirm the validity of the deed of trust. This would allow Nationstar to

29

collect the advanced amounts from the proceeds of a foreclosure sale, which the servicing agreement authorizes Nationstar to conduct on BONY's behalf. Second, Nationstar argues it would seek an equitable lien in the amount of the delinquent mortgage payments and property taxes it claims it has advanced to BONY.

### 1. *Nationstar could not successfully move to set aside the Shoreham action judgment*

The only basis on which Nationstar could move to set aside the Shoreham action judgment, were Nationstar permitted to intervene, would be that the judgment is void on its face. At the time Nationstar filed its motion to intervene, the deadline for setting aside the motion on any other basis had long since passed. (See § 473, subd. (b); *Becker, supra*, 27 Cal.3d at pp. 492–493 [courts apply rules that govern collateral attacks on judgments to motion to intervene that is untimely under section 473].) In deciding BONY's appeal above, however, we conclude that, as a matter of law, the Shoreham action judgment is *not* void, and that it cannot be set aside as such.

Nationstar has identified only one additional argument beyond those offered by BONY that might support such a motion to set aside: that Nationstar is an indispensable party to the Shoreham action and thus the judgment in that action is void as against Nationstar. Like the arguments to void the judgment that BONY offers above, this argument fails. The rights and obligations regarding the deed of trust and property that Nationstar claims render it an indispensable party are rights and obligations Nationstar holds *as an agent of BONY*, and "[a]n agent is not an indispensable party in litigation between his principal and a third party over the subject matter of the agency."

30

(*Writers Guild of America, West, Inc. v. Screen Gems, Inc.* (1969) 274 Cal.App.2d 367, 374–375.)

We therefore conclude that, even assuming—without deciding—that the court erred in denying Nationstar's motion to intervene so Nationstar could move to set aside the judgment, any such error could not have prejudiced Nationstar, because it could not have successfully moved to set aside the Shoreham action judgment as void in any event.

### 2. *Nationstar could not secure an equitable lien via intervention in the Shoreham action*

When one party involuntarily pays a debt for which another is primarily liable, the party who paid the debt may have the right to pursue an equitable lien. (*Fidelity National Title Ins. Co. v. Miller* (1989) 215 Cal.App.3d 1163, 1174.) "An equitable lien . . . may arise from a contract which reveals an intent to charge particular property with a debt or 'out of general considerations of right and justice as applied to the relations of the parties and the circumstances of their dealings.' [Citation.]" (*Farmers Ins. Exchange v. Zerin* (1997) 53 Cal.App.4th 445, 453 (*Zerin*).) Although an equitable lien may be appropriate in many different scenarios, it is in all cases " 'a remedy designed to enforce restitution so as to prevent unjust enrichment.' " (*Fidelity National Title Ins. Co. v. Miller*, *supra*, at p. 1174.)

As a preliminary matter, Shoreham was not unjustly enriched by Nationstar's payments to BONY on Shahi's debt, such that equity might justify imposing a lien on the property Shoreham currently owns. Shoreham did not have any agreement with Nationstar that Nationstar would make payments on the loan or pay taxes on the property. Moreover,

31

Nationstar made no payments at all regarding the property since Shoreham took title in 2017.

Nationstar nevertheless argues that it is entitled to an equitable lien on the property, regardless of who currently owns it, based on Nationstar having made payments on a debt secured by the property and having paid taxes on the property. But the mere fact that Shahi used the property to secure the debt Nationwide helped pay does not give Nationstar any rights (equitable or otherwise) *with regard to the property,* or with regard to the deed of trust on the property, to which Nationstar was not a party.

Nor does the foreclosure provision in the servicing agreement give Nationstar any interest in the property that might entitle it to seek an equitable lien. That provision merely allowed Nationstar to conduct a foreclosure sale on BONY's behalf, and to deduct any advances from the proceeds of a foreclosure sale, should one take place. (See *Zerin, supra*, 53 Cal.App.4th at p. 454 ["[a] promise to pay a debt out of a particular fund, without more, will not create an equitable lien on that fund"].)

We therefore conclude that, even assuming the trial court erred in denying Nationstar's motion to intervene so that Nationstar could seek an equitable lien, any such error was harmless, as Nationstar could not have secured an equitable lien in any event.

## SHOREHAM'S APPEAL FROM DENIAL OF ATTORNEY FEES (APPEAL NO. B296777)

Shoreham moved for attorney fees following entry of the default judgment in its favor in the Shoreham action. The court concluded that there was no legal basis for Shoreham's request,

and denied the motion. Shoreham appealed. Because the trial court's order did not resolve any disputed factual issues, our review is de novo. (*Mountain Air Enterprises, LLC v. Sundowner Towers, LLC* (2017) 3 Ca1.5th 744, 751.)

Shoreham argues it is entitled to attorney fees under Civil Code section 1717 and various provisions of the deed of trust that reference attorney fees the lender may incur. Shoreham relies primarily on paragraph 9 in the deed of trust, entitled "protection of lender's interest in the property and rights under this security instrument." (Capitalization and boldface omitted.) Paragraph 9 is a common provision in deeds of trust, and provides, in pertinent part: "If . . . there is a legal proceeding that might significantly affect lender's interest in the property and/or rights under this security instrument . . . then lender may do and pay for whatever is reasonable or appropriate to protect lender's interest in the property and rights under this security instrument, including protecting and/or assessing the value of the property, and securing and/or repairing the property. Lender's actions can include, but are not limited to (a) paying any sums secured by a lien which has priority over this security instrument, (b) appearing in court, and (c) *paying reasonable attorneys' fees to protect its interest in the property and/or rights under this security instrument . . . .* [¶] *Any amounts disbursed by lender under [this section] shall become additional debt of borrower secured by this security instrument.* These amounts shall bear interest at the note rate from the date of disbursement and shall be payable, with such interest, upon notice from lender to borrower requesting payment." (Capitalization omitted and italics added.)

Civil Code section 1717 imposes a mutuality of remedy for unilateral attorney fees provisions under certain circumstances. (Civ. Code, § 1717, subd. (a); see, e.g., *Tract 19051 Homeowners Assn. v. Kemp* (2015) 60 Cal.4th 1135, 1146.)  In order for Civil Code section 1717 to apply:  (1) the underlying action must be one "on a contract," and (2) that contract must "specifically provide[ ] that attorney's fees and costs . . . incurred to enforce th[e] contract[ ] shall be awarded either to one of the parties or to the prevailing party."  (Civ. Code, § 1717, subd. (a).)  Where these conditions are met, Civil Code section 1717 applies, and "the party who is determined to be the party prevailing on the contract, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to other costs."  (*Id.,* § 1717, subd. (a).)  Put differently, when Civil Code section 1717 applies, a unilateral provision that would have entitled only party A to recover fees if party A prevails, creates a basis for party B to recover fees, if party B prevails.

To determine whether Shoreham may recover the fees it seeks under paragraph 9 of the deed of trust and Civil Code section 1717, we must first determine whether Civil Code section 1717 applies to the deed of trust at all.  If it does apply, we must then determine whether Shoreham—a "nonassuming grantee"[13] that did not sign the deed of trust and could not be held personally liable thereunder—can recover under the deed's provisions regarding attorney fees for the lender, rendered reciprocal under Civil Code section 1717.  We do not reach the

---

[13] A "nonassuming grantee" is a purchaser of real property who takes property " 'subject to' " an existing loan.  (*Saucedo v. Mercury Savings & Loan Assn.* (1980) 111 Cal.App.3d 309, 314–315 (*Saucedo*).)

second step in this analysis, however, because we agree with the trial court that Civil Code section 1717 does not apply to the deed of trust.

Shoreham correctly argues, and BONY concedes, that the Shoreham action is one "on a contract," the first requirement for Civil Code section 1717 applicability. (See, e.g., *Eden Township Healthcare Dist. v. Eden Medical Center* (2013) 220 Cal.App.4th 418, 427.) As to the second requirement, in *Hart v. Clear Recon Corp.* (2018) 27 Cal.App.5th 322 (*Hart*), Division Eight of this court considered whether the exact language in paragraph 9 " 'specifically provides that attorney's fees . . . shall be awarded' to one party or the prevailing party" and concluded that "[b]y its plain language, it does not. The paragraph allows the lender to take numerous actions, including incurring attorney's fees, to protect its interest. It then provides . . . that '[a]ny amounts disbursed by lender under this section 9 shall become additional debt of borrower secured by this security instrument.' This is not a provision that attorney's fees 'shall be awarded'; it is, instead, a provision that attorney's fees, like any other expenses the lender may incur to protect its interest, will be added to the secured debt." (*Hart, supra,* at p. 327, capitalization omitted.) We agree with *Hart*'s conclusion that paragraph 9 does not contain an attorney fees provision that triggers Civil Code section 1717.[14] (See also *Chacker v. JPMorgan Chase Bank, N.A.* (2018) 27 Cal.App.5th 351, 358, fn. 6 (*Chacker*) [noting court's

---

[14] Shoreham's attempt to distinguish this case from *Hart* based on its facts is unavailing, as *Hart*'s analysis was both based solely on the application of Civil Code section 1717 to the language of paragraph 9, not any other factual circumstances, and, in our view, correct.

interpretation of paragraph 9 language essentially the same as in *Hart*].)

Shoreham argues the trial court erred in relying on *Hart*, based on cases in which the court awarded attorney fees under Civil Code section 1717 involving instruments that contained paragraph 9. (See *Saucedo, supra,* 111 Cal.App.3d 309; *Wilhite v. Callihan* (1982) 135 Cal.App.3d 295 (*Wilhite*).)

But the instrument at issue in both of those cases also included other language that triggered Civil Code section 1717, so the courts did not have occasion to determine whether paragraph 9 alone could do so. Namely, the deed at issue in *Saucedo* included, in addition to paragraph 9, a provision that the borrower " 'shall pay [the lender's] attorney fees in connection with' " an action to enforce the loan and would "pay all costs and expenses, including . . . attorney's fees in a reasonable sum, in any such action or proceeding in which beneficiary or trustee may appear." (*Saucedo, supra*, 111 Cal.App.3d at p. 311, capitalization and italics omitted.) Likewise, in *Wilhite*, the instrument provided that the borrower agreed " 'to pay all costs and expenses, including cost of evidence of title and attorney's fees in a reasonable sum, in any such action or proceeding in which the beneficiary or trustee may appear.' " (*Wilhite, supra*, 135 Cal.App.3d at p. 301, capitalization omitted.) Because the instruments at issue in *Saucedo* and *Wilhite* included a provision triggering Civil Code section 1717, the Courts of Appeal deciding those cases went on to the second step of the analysis outlined above: determining whether a nonassuming grantee could collect under the instrument and Civil Code section 1717. *Saucedo* and *Wilhite* relied on the language of paragraph 9 and the doctrine of

"practical liability" in analyzing this separate issue.[15] But the outcome of that analysis does not affect the antecedent, threshold issue of whether or how Civil Code section 1717 governs any portion of the deed in the first place. These are two completely separate issues, as evidenced by the fact that *Hart*, although it post-dates both *Saucedo* and *Wilhite*, does not disagree with, distinguish, or even reference those cases. *Hart* did not need to do so, because neither *Saucedo* nor *Wilhite* required the

---

[15] The doctrine of practical liability recognizes that a subsequent grantee of a property may be liable in practice for attorney fees incurred by an adverse party during a dispute regarding the property if a deed of trust allows for such fees to be added to the underlying debt secured by the property. Under such circumstances, the subsequent grantee may ultimately be required to pay those attorney fees, even though the subsequent grantee would not have had personal liability to the lender had the lender sued for damages rather than foreclosing the deed of trust. *(Saucedo, supra,* 111 Cal.App.3d at pp. 314–315.) When Civil Code section 1717 applies to the deed of trust, "[t]his practical 'liability' of the nonassuming grantee is sufficient to call into play the remedial reciprocity" of that section. (*Saucedo, supra*, at p. 315; see *Wilhite, supra,* 135 Cal.App.3d 295 [because nonassuming grantee prevailing in suit to prevent foreclosure by lender under due-on-sale clause would have been practically liable for attorney fees via paragraph 9 language in the deed, nonassuming grantee could recover fees under section Civil Code section 1717]; see also *Milman v. Shukhat* (1994) 22 Cal.App.4th 538, 541–542 [applying Civil Code section 1717 to a note that allegedly both " 'provided for attorney fees if an action should be brought on the note' " and contained the statement " '[s]hould suit be commenced to collect this note or any portion thereof, such sum as the [c]ourt may deem reasonable shall be added hereto as attorney's fees' "].)

37

court to analyze whether paragraph 9 could trigger Civil Code section 1717—in the latter two cases, other language in the deed at issue already did so.

Nor does the other language in the deed of trust on which Shoreham relies (paragraph 14 and paragraph 22) trigger the application of Civil Code section 1717. These provisions allow the lender to charge the borrower for attorney fees that the lender incurs either enforcing the acceleration clause in the deed or in exercising the lender's power of sale in the event of a default. At least one court has held that the language in paragraph 14 is not an attorney fees provision that can trigger the applicability of Civil Code section 1717. (See *Chacker, supra*, 27 Cal.App.5th at p. 357.) We agree with this conclusion as to both paragraph 14 and paragraph 22, because the plain language of neither provision requires an award of attorney fees to anyone. Moreover, even if we were to assume, for the sake of argument, that Civil Code section 1717 applies to the deed of trust as a result of either of these provisions, it would only apply to awards of attorney fees under those provisions: Namely, attorney fees incurred in connection with an acceleration clause or foreclosure sale. The attorney fees Shoreham seeks are neither. Finally, because there is no requirement that the attorney fees discussed in paragraphs 14 and 22 be added to the debt secured by the property under the note, there is no basis on which Shoreham could argue that, had BONY prevailed, Shoreham, as a nonassuming grantee who is not the borrower under the loan secured by the deed, BONY could have sought fees from Shoreham under either paragraph 14 or paragraph 22.

Thus, even assuming Shoreham would be practically liable for attorney fees BONY incurred in the Shoreham action, had

38

BONY prevailed, Civil Code section 1717 is of no assistance to Shoreham in rendering that unilateral contractual obligation reciprocal, because it does not apply to the deed of trust.

## DISPOSITION

The court's orders are affirmed.

BONY and Shoreham shall bear their own costs resulting from BONY's appeal (case No. B294377).  Shoreham shall recover its costs resulting from Nationstar's appeal (case No. B294377).  BONY shall recover its costs resulting from Shoreham's appeal (case No. B296777).

<u>NOT TO BE PUBLISHED</u>.


ROTHSCHILD, P. J.

We concur:


CHANEY, J.


FEDERMAN, J.*

---

\* Judge of the San Luis Obispo County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

39