Filed 10/9/13

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| EDEN TOWNSHIP HEALTHCARE DISTRICT, <br><br>   Cross-complainant and Respondent, <br><br> v. <br><br> EDEN MEDICAL CENTER, <br><br>   Cross-defendant and Appellant. | A136695 <br><br> (Alameda County <br> Super. Ct. No. RG09-481573) |

Cross-defendant Eden Medical Center (EMC) appeals the trial court's order denying its motion for attorney fees under Civil Code section 1717 (section 1717). The motion was denied after cross-complainant Eden Township Healthcare District (District) unsuccessfully sought declaratory relief to have certain agreements declared illegal and void under Government Code section 1090.[1] EMC claims the court erred in finding that the action on which EMC prevailed was not "on a contract" within the meaning of section 1717. We agree and reverse, and remand to the lower court to award EMC its attorney fees.

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

This is the second time we have considered an appeal in this case. (See *Eden Township Healthcare Dist. v. Sutter Health* (2011) 202 Cal.App.4th 208 (*Eden I*).)

---

[1] Government Code section 1090 provides in relevant part: "Members of the Legislature, state, county, district, judicial district, and city officers or employees shall not be financially interested in any contract made by them in their official capacity, or by any body or board of which they are members." Where a prohibited interest is found, the affected contract is void from its inception. (*Thomson v. Call* (1985) 38 Cal.3d 633, 646 & fn. 15.)

**I.** *The Parties and the History of Their Written Agreements*

We quote at length from our discussion of the facts in our prior opinion:[2]

"The District is a public agency established in 1948 pursuant to California's Local Health Care District Law (Health & Saf. Code, § 32000 et seq.). The mission of the District is to 'fulfill the function of protecting the public health and welfare by furnishing hospital services [and] provid[ing] for the public health and welfare . . . .' (*Talley v. Northern San Diego Hosp. Dist.* (1953) 41 Cal.2d 33, 40, overruled on other grounds in *Muskopf v. Corning Hospital Dist.* (1961) 55 Cal.2d 211, 213.) The District's operations are overseen by a board comprised of five publicly elected members. . . . Prior to 1998, the District owned and operated multiple hospitals in Alameda County, including [Eden Hospital (Eden)] in Castro Valley.

"[Sutter Health (Sutter)] is a California nonprofit public benefit corporation. Sutter does not own any hospitals. The 24 hospitals with which Sutter is affiliated are owned by other nonprofit public benefit corporations. Sutter is a 'member' of each of these nonprofit public benefit corporations, including EMC.

"EMC is a California nonprofit corporation that was formed to operate Eden for the District. EMC also operates [San Leandro Hospital (SLH)], which is a general acute care hospital with an emergency services department. EMC currently leases SLH from the District. EMC is owned not by shareholders, but by its two members. The District is the 'Community Member' of EMC, and Sutter is its 'General Member.' During the time period relevant to this lawsuit, EMC had 11 voting directors, five of whom were the members of the District's board.

"[¶] . . . [¶]

"In 1997, Sutter purchased Eden from the District for $30 million, plus an assumption of approximately $40 million of District debt. Sutter also invested approximately $65 million in improvements to the hospital campus, including the purchase of adjoining property to expand. Pursuant to a 1997 memorandum of

---

[2] We take judicial notice of our opinion in *Eden I,* and of the record in that case.

understanding between the District and Sutter (the 1997 MOU), Eden's assets were transferred to EMC, then known as 'NewCo.' . . .

"By the early 2000's, Eden, which was built in the 1950's, faced the prospect of closure because the facility did not meet current seismic code requirements. To address this problem, the District entered into an agreement in 2004 (the 2004 Agreement) by which EMC agreed to spend at least $262 million to construct a new hospital to replace Eden. Around this time, the District purchased SLH from a third party and leased it to EMC, on the condition that EMC maintain general acute care services at SLH for three years. Sutter guaranteed EMC's obligations under the 2004 Agreement. The 2004 Agreement further provided that if the replacement hospital was not operational by December 2011, EMC would purchase SLH at a price equal to $35 million, minus straight line depreciation.

"In 2006, Sutter notified EMC's board, including the five District board members, that it would not build the contemplated replacement hospital. In November 2006, the District notified respondents that they were in breach of their contractual obligation to the District to construct the replacement hospital. The District claimed Sutter's notification amounted to an anticipatory breach and threatened to sue Sutter for $262 million if it did not provide 'adequate written assurance' that it would construct the replacement hospital.

"[¶] . . . [¶]

"The negotiations ultimately resulted in a series of related agreements, including a new memorandum of understanding and an amended and restated lease and hospital operations agreement (the 2008 Lease), which were signed by the parties in March 2008 (collectively, the 2008 Agreements). Under the 2008 Agreements, Sutter committed to spending $300 million to construct the replacement hospital, secured by a $260 million escrow deposit. Additionally, the provision in the 2004 Agreement that had called for the District to sell SLH to Sutter was converted into an option for Sutter to purchase. The 2008 Agreements also required the District board members to resign as directors of EMC six months after a notice of commencement of construction of the new hospital had been delivered. . . .

3

"Construction of the replacement hospital began on July 15, 2009.

"On July 27, 2009, Sutter exercised its option to purchase SLH. Sutter announced that after it acquired title it planned to lease SLH to another party in order to convert the facility from an acute care emergency services hospital to an acute rehabilitation hospital. According to the District's brief [filed in *Eden I*], 'a newly constituted District board determined that it was not in the best interests of the citizens served by the District to allow [SLH] to be transferred to Sutter and closed as a provider of emergency care services.' The District refused to convey SLH to Sutter, asserting Sutter had breached an obligation to convert the fourth floor of SLH to acute rehabilitation. Sutter then commenced arbitration proceedings against the District.

"On October 27, 2009, Sutter filed a complaint against the District for specific performance of a written agreement to convey real property and for damages. The complaint alleges the District refused to proceed with the sale of SLH, in repudiation and breach of the 2008 Lease and of the purchase and sale agreement that was formed upon Sutter's exercise of the option. Sutter indicated it had filed the action to preserve its rights while the dispute was being arbitrated. The complaint seeks specific performance of the purchase and sale agreement, delay damages for breach of contract, constructive trust, and declaratory relief concerning the parties' rights and duties with respect to the transfer of title to SLH.

"On December 3, 2009, the parties filed a stipulation to stay the lawsuit pending arbitration. The trial court ordered the action stayed.

"On March 8, 2010, the arbitrator issued his decision finding Sutter was entitled to an award of specific performance of its right to a conveyance of SLH. The arbitrator specifically did not rule on the legality of the 2008 Agreements, including the issue of whether any of the agreements had been created in violation of [Government Code] section 1090. The decision preserved the District's right to seek to vacate the award by challenging the validity of the 2008 Agreements.

4

"On March 10, 2010, the District filed its answer to Sutter's complaint. As its first affirmative defense, the District alleged that the contracts underlying the complaint are illegal and invalid under [Government Code] section 1090.

"Also on March 10, 2010, the District filed a cross-complaint for declaratory and injunctive relief against [Sutter and EMC]. In the declaratory relief action, the District contended that the 2008 Agreements are void under [Government Code] sections 1090 and 1092[3] because certain District board members and executives who participated in the negotiation, drafting, approval, and execution of the 2008 Agreements had a prohibited financial interest therein.

"On April 22, 2010, [Sutter and EMC] filed their answer to the District's cross-complaint.

"On September 15, 2010, the District filed a motion for summary adjudication of its cause of action for declaratory relief, asserting the 2008 Agreements are void under [Government Code] sections 1090 and 1092.

"On September 16, 2010, [Sutter and EMC] filed a motion for summary judgment. [They] contended the District could not establish the elements of its causes of action. . . .

"[¶] . . . [¶]

"On November 12, 2010, the trial court filed its order granting respondents' motion for summary judgment on the District's cross-complaint and denying the District's motion for summary adjudication." (*Eden I, supra*, 202 Cal.App.4th at pp. 213–218, fns. omitted.]

On December 21, 2011, we affirmed the trial court's judgment in *Eden I,* and the Supreme Court denied review.

---

[3] "[Government Code section] 1092 sets forth some of the consequences of a civil violation of [Government Code] section 1090's rule against conflicts of interest: '(a) Every contract made in violation of any of the provisions of Section 1090 may be avoided at the instance of any party except the officer interested therein. No such contract may be avoided because of the interest of an officer therein unless the contract is made in the official capacity of the officer, or by a board or body of which he or she is a member.' . . ."

5

On May 22, 2012, EMC filed an amended motion for attorney fees and costs.

On August 29, 2012, the trial court filed its order denying EMC's request for attorney fees. The court found the action was not "on a contract" for purposes of section 1717. This appeal followed.

## DISCUSSION

### I. *Standard of Review*

"On appeal this court reviews a determination of the legal basis for an award of attorney fees de novo as a question of law." (*G. Voskanian Construction, Inc. v. Alhambra Unified School Dist.* (2012) 204 Cal.App.4th 981, 995.)

### II. *Section 1717 and Attorney Fee Awards*

California follows the " 'American rule,' " under which each party to a lawsuit must pay its own attorney fees unless a contract or statute or other law authorizes a fee award. (Code Civ. Proc., §§ 1021, 1033.5, subd. (a)(10); *Musaelian v. Adams* (2009) 45 Cal.4th 512, 516.)

Section 1717 governs attorney fees awards authorized by contract and incurred in litigating claims sounding in contract. (*Frog Creek Partners, LLC v. Vance Brown, Inc.* (2012) 206 Cal.App.4th 515, 523; *Silverado Modjeska Recreation & Park Dist. v. County of Orange* (2011) 197 Cal.App.4th 282, 310.) Under that statute, when a contract provides for an award of fees "incurred to enforce that contract," "the party prevailing on the contract . . . shall be entitled to reasonable attorney's fees . . . ." (§ 1717, subd. (a).)[4] "The primary purpose of section 1717 is to ensure mutuality of remedy for attorney fee claims under contractual attorney fee provisions." (*Santisas v. Goodin* (1998) 17 Cal.4th 599, 610.) Thus, "when a party litigant prevails in an action on a contract *by establishing that the contract is invalid, inapplicable, unenforceable, or nonexistent,* section 1717

_____

[4] Section 1717, subdivision (a) provides, in part: "In any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to other costs."

6

permits that party's recovery of attorney fees whenever the opposing parties would have been entitled to attorney fees under the contract had they prevailed." (*Id.* at p. 611, italics added.)

In the present case, we consider whether a party who *defends* against an action for declaratory and injunctive relief in which the complaining party *unsuccessfully* asserts that the underlying contract is illegal and invalid may recover its attorney fees from the complaining party.

## III. *Contentions of the Parties*

It is uncontested that EMC is the prevailing party in the underlying action. EMC (and Sutter) established that the 2008 Agreements were not made in violation of Government Code section 1090. The basis for an attorney fees award asserted in this case was contractual: EMC requested attorney fees under a clause in the 2008 memorandum of understanding (2008 MOU), which provides: "The prevailing party in any action or proceeding commenced in court for breach of this Agreement shall be entitled to its attorneys' fees, costs, and expenses of experts incurred in prosecuting or defending such action or proceeding." We also note the 2008 MOU specifically incorporates the 2008 Lease.

### A. *An Action to Avoid Enforcement is an "Action on a Contract"*

EMC first argues that an action to avoid enforcement of a contract is an action "on a contract" within the meaning of section 1717. We agree.

"California courts construe the term 'on a contract' liberally." (*Turner v. Schultz* (2009) 175 Cal.App.4th 974, 979 (*Turner*).) The phrase "action on a contract" includes not only a traditional action for damages for breach of a contract containing an attorney fees clause (e.g., *Jones v. Drain* (1983) 149 Cal.App.3d 484, 487–488), but also any other action that "involves" a contract under which one of the parties would be entitled to recover attorney fees if it prevails in the action (e.g., *Mitchell Land & Improvement Co. v. Ristorante Ferrantelli, Inc.* (2007) 158 Cal.App.4th 479, 486). "In determining whether an action is 'on the contract' under section 1717, the proper focus is not on the nature of

the remedy, but on the basis of the cause of action." (*Kachlon v. Markowitz* (2008) 168 Cal.App.4th 316, 347.)

"Employing this approach, courts have held the phrase 'action on a contract' as used in section 1717 includes an action seeking declaratory and injunctive relief to enforce a consent decree [citation] or to avoid enforcement of an arbitration clause [citation]; an action seeking declaratory and injunctive relief and quiet title based on violations of the terms of a promissory note and deed of trust [citation]; an unlawful detainer action based on a lessee's alleged breach of covenants in a lease [citation]; a conversion action based on breach of a safe deposit box contract [citation]; and an action for reformation of a contract [citation]. [¶] In contrast, courts have held the phrase 'action on a contract' as used in section 1717 does *not* include an action asserting only tort claims [citation]; a tort action for fraud arising out of a contract [citation]; an action including a claim labeled breach of contract but not seeking to enforce anyone's rights under the only contract containing an attorney fees clause [citation]; an unjust enrichment cause of action [citation]; an action on a contract that does not contain an attorney fees provision [citation]; an unlawful detainer action based on tortious holding over after expiration of a lease [citation]; an action against an attorney for professional negligence [citation]; or an action to enforce a judgment obtained for breach of a promissory note [citation]." (*Douglas E. Barnhart, Inc. v. CMC Fabricators, Inc.* (2012) 211 Cal.App.4th 230, 241 (*Douglas E. Barnhart*).)

In its review of pertinent legal authority, the appellate court in *Douglas E. Barnhart,* distilled the following principle: "An action (or cause of action) is 'on a contract' for purposes of section 1717 if (1) the action (or cause of action) 'involves' an agreement, in the sense that the action (or cause of action) arises out of, is based upon, or relates to an agreement by seeking to define or interpret its terms or to determine or enforce a party's rights or duties under the agreement, and (2) the agreement contains an attorney fees clause." (*Douglas E. Barnhart, supra,* 211 Cal.App.4th at pp. 241–242.) In the instant case, both of these prongs are satisfied.

8

By its cross-complaint, the District sought to invalidate the 2008 Agreements. Candidly, it is difficult to think of an action that is more likely to be characterized as an "action on a contract" than one in which the party bringing the action explicitly seeks to have the subject contract declared void and invalid in its entirety. And, as noted above, the 2008 MOU contains a provision for attorney fees and costs.

We addressed an analogous situation in *Shadoan v. World Savings & Loan, Assn.* (1990) 219 Cal.App.3d 97 (*Shadoan*). In *Shadoan,* the loan agreement provided: " 'If legal action is instituted to enforce any of the terms or provisions of this note, the lender shall be entitled to recover all costs and expenses incurred in bringing such action, including reasonable attorney's fees, the amount of which shall be determined by the Court.' " (*Id.* at p. 107.) The plaintiffs sued for a refund of a prepayment penalty, both for themselves and on behalf of others, alleging the defendant had committed an unfair business practice in charging the penalty. (*Id.* at pp. 100–101.) We noted that the plaintiffs' action did not fall within the express provision of the attorney fees clause, because the action was not instituted to enforce a provision of the contract. Nevertheless, we held that the action was "on a contract" (with respect to the plaintiffs' own claim for recovery) because the challenge to the prepayment penalty could have been raised as a defense to an action to enforce the terms of the contract, though the defendant clearly could not have brought such an action because the plaintiffs had already paid the prepayment penalty in accordance with their loan agreement. (*Id*. at pp. 107–108.) Similarly, had the circumstances been such that EMC was seeking to enforce a provision of the 2008 Lease against the District, the District could have alleged as a defense the invalidity of the agreement under Government Code section 1090. In fact, the District did just that in its answer to Sutter's complaint.

In *Turner,* the plaintiff had entered a buy-sell agreement with two other shareholders. (*Turner, supra,* 175 Cal.App.4th 974, 977.) The agreement contained an arbitration clause stating that in the event a controversy arose out of the buy-sell agreement, the claims would be settled by arbitration. A dispute arose out of the agreement and the two shareholders and the company demanded arbitration. The

plaintiff filed two actions seeking to avoid arbitration. (*Id.* at pp. 977–978.) The two shareholders and the company defeated both actions. (*Id.* at p. 978.) They then successfully moved for attorney fees. (*Ibid*.) The appellate court affirmed, holding that fees may be properly awarded under section 1717 to the extent that the action is in fact an action to enforce—or avoid enforcement of—the specific contract. (*Turner,* at p. 980.)

In the present case, EMC could not have brought a lawsuit for breach of the 2008 Agreements, because the District had performed its obligations. The District filed the instant action to have the 2008 Agreements declared invalid, thereby allowing it to unwind its performance made to satisfy those agreements. Under *Shadoan,* EMC is entitled to attorney fees, because the same issue could have been raised by the District as a defense to a breach of contract claim. Here, the issue was raised affirmatively in an effort to legitimize the District's position that it would incur no liability if it took actions contrary to the 2008 Agreements. Additionally, we note the District sought attorney fees as against both Sutter and EMC in its cross-complaint. This is strong indicia that the District intended its action to be "on the contract."[5]

### B. *Whether the 2008 MOU Authorizes EMC's Attorney Fees*

The District asserts the relevant provision in the 2008 MOU does not allow EMC to recover its fees. As noted above, that provision provides: "The prevailing party in any action or proceeding commenced in court *for breach of this Agreement* shall be entitled to its attorneys' fees, costs, and expenses of experts incurred in prosecuting or defending such action or proceeding." (Italics added.) The District claims that neither it nor EMC commenced an action for breach of the 2008 Agreements. Instead, the District references

---

[5] EMC further notes that the District's cross-complaint sought to reinstate the 1997 MOU between the District, EMC, and Sutter. The 1997 MOU contains the following attorney fee provision: "In the event of any suit under this Agreement, there shall be allowed to the prevailing Party, to be included in any judgment recovered, reasonable attorneys' fees to be fixed by the court." EMC reasons that the District's declaratory relief action was a suit under the 1997 MOU as the action sought to resurrect that agreement and enforce its terms. In light of our conclusions, we need not address this issue.

10

Sutter's complaint, which was brought against the District for breach of the 2008 Lease. The District claims EMC is not entitled to attorney fees because it is not a party to that action. But EMC is not seeking attorney fees as the prevailing party with respect to Sutter's lawsuit. Rather, EMC is seeking its attorney fees because *the District chose to file a cross-complaint against EMC* in an action "on a contract" under section 1717. In filing the cross-complaint, the District initiated this action against EMC seeking to have the 2008 Agreements declared void so that it would no longer be obligated to EMC under those agreements. Thus, this case is controlled by cases such as *Turner* and *Shadoan,* holding that a contracting party who successfully defends against a claim that the underlying contract is void is entitled to attorney fees as the prevailing party under section 1717, regardless of whether the defendant previously had asserted its own affirmative claim to enforce the contract.

The District also contends that the language of the fee provision in the 2008 MOU does not allow attorney fees to be awarded to EMC because it did not commence the cross-complaint *for breach* of the 2008 Agreements. But the District commenced this action to establish the opposite, namely, that its performance could be unwound, essentially in breach of the 2008 Agreements, because these agreements were void *ab initio*. Thus, EMC's defense was commenced to uphold the validity of the agreements and, in essence, forestall the District's anticipatory breach.

In its brief on appeal, the District also attempts to distinguish the instant matter by discussing cases that apply the "mutuality of remedy" and the "necessary step" doctrines. The "mutuality of remedy" doctrine is typically used in cases in which a party establishes that it is either not a party to a contract,[6] or that the contract it is a party to is void or

---

[6] "For example a nonsignatory who prevails in an action on the contract is entitled to attorney fees provided it would have been liable for fees had the other party prevailed. [Citation.] Conversely, on occasion attorney fees may be assessed *against* a nonsignatory who loses an action on the contract. [Citation.] '[T]he courts have generally ruled that, if a prevailing signator would be entitled to fees against a nonprevailing nonsignator, then nonsignators in litigation on such contracts are both entitled to attorney fees if they

11

unenforceable. Under that doctrine, if the party would have been exposed to fees had the court found against it, then that party is entitled to fees for prevailing. EMC contends the facts of this case do not directly implicate this doctrine because the 2008 Agreements have been deemed valid. It is worth noting, however, that if the District had established the invalidity of the 2008 Agreements, then *the District* could have invoked the mutuality of remedy doctrine to establish its entitlement to attorney fees. This conclusion is enforced by the District's inclusion of a prayer for attorney fees in its cross-complaint.[7] We conclude awarding attorney fees to the party who successfully thwarts the other party's efforts to have a contract declared void at its inception is consistent with the mutuality of remedy doctrine.[8]

According to the District, the "necessary step" doctrine applies when a party prevails on a claim or defense that is not "on a contract," but which is a necessary step to enforcing its rights under a contract. In those situations, courts award fees for prevailing on the intermediate (noncontract) claim or defense because the fees were necessarily

---

prevail and obligated to pay attorney fees if another party prevails.' [Citation.]" (*Hyduke's Valley Motors v. Lobel Financial Corp.* (2010) 189 Cal.App.4th 430, 435.)

[7] On appeal, the District claims it would not have been able to collect its attorney fees from EMC had it prevailed on its cross-complaint because EMC was not a party to the breach of contract action filed by Sutter. Courts have held the mere pleading of a right to fees does not create an estoppel when the pleader would not have actually been entitled to recover fees in the event it had prevailed on the merits. (*Sessions Payroll Management, Inc. v. Noble Construction Co.* (2000) 84 Cal.App.4th 671, 681–682 [nonsignatory suing as a third party beneficiary had no right to recover attorney fees under the contract and was not stopped from contesting attorney fee award]; see *Scott Co. v. Blount, Inc.* (1999) 20 Cal.4th 1103, 1113–1114 [" 'To achieve its goal, [section 1717] generally must apply in favor of the party prevailing on a contract claim whenever that party would have been liable under the contract for attorney fees had the other party prevailed.' "].) Here, the District was a party to the contract and it appears it would have had a right to claim its attorney fees under the mutuality of remedy doctrine had it prevailed on its cross-complaint.

[8] We agree with the following observation: "A prevailing defendant should not be required to undergo a minitrial to establish the merit of the *losing plaintiff's* hypothetical fee claim under the contract on which the plaintiff sued." (*Linear Technology Corp. v. Tokyo Electron Ltd.* (2011) 200 Cal.App.4th 1527, 1538.)

expended to prevail on the contract.  Our own research does not support the existence of this principle as an established "doctrine."  Regardless, here there was no intermediate noncontractual step.  Instead, EMC was compelled by the District's actions to defensively enforce the 2008 Agreements, thereby obtaining relief from breach of those agreements.  Thus the so-called "necessary step" doctrine has no application.

We therefore conclude that having elected to proceed with its contractual invalidation theory, the District put the 2008 MOU's attorney fees clause in play: "Where an attorney fee clause provides for an award of fees incurred in enforcing the contract, the prevailing party is entitled to fees for any action 'on the contract,' whether incurred offensively or defensively.  [Citations.]" (*Turner, supra,* 175 Cal.App.4th 974, 980.)  Having failed in its attempt to prove that the 2008 Agreements are void, the District is now liable for EMC's attorney fees under section 1717.

## DISPOSITION

The order is reversed and the matter is remanded to the trial court to award EMC its attorney fees.


_____

Dondero, J.


We concur:


_____

Margulies, Acting P. J.


_____

Banke, J.

13

*Eden Township Healthcare District  v.  Eden Medical Center, Inc., A136695*

Trial Court:   Alameda County Superior Court

Trial Judge:   Hon. Marshall Ivan Whitley

Counsel:

DLA Piper LLP, Stephen L. Goff, Marcia L. Augsburger, and Ashley H. Joyce for Cross-defendant and Appellant Eden Medical Center.

Pillsbury Winthrop Shaw Pittman LLP, Christopher R. Rodriguez, Darcy L. Muilenburg, and Kevin M. Fong for Cross-complainant and Respondent Eden Township Healthcare District.