Filed 11/3/22

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE TRAVELERS INDEMNITY CO., | B306897 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. 19STCP00877) |
| v. | |
| RICARDO LARA, as Insurance Commissioner, etc., | |
| Defendant and Respondent; | |
| ADIR INTERNATIONAL, LLC, | |
| Real Party in Interest. | |

APPEAL from a judgment and postjudgment order of the Superior Court of Los Angeles County, James C. Chalfant, Judge. Affirmed.

Gordon & Reese, Asim K. Desai, Margaret M. Drugan; Gibson, Dunn & Crutcher, Blane H. Evanson and Samuel Eckman for Plaintiff and Appellant.

Rob Bonta, Attorney General, Tamar Pachter, Senior Assistant Attorney General, Lisa W. Chao, Supervising Deputy

Attorney General, and John C. Keith, Deputy Attorney General, for Defendant and Respondent.

Klapach & Klapach and Joseph S. Klapach for Real Party in Interest.

_____

The Travelers Indemnity Company appeals the judgment entered after the superior court denied Travelers' petition for a writ of administrative mandate challenging the Insurance Commissioner's decision that certain agreements relating to workers' compensation insurance policies issued to Adir International, LLC were unenforceable. Travelers contends Adir's lawsuit in the trial court, which included a request for a declaratory judgment the agreements were void, barred the Commissioner, under the doctrine of exclusive concurrent jurisdiction, from exercising jurisdiction while that lawsuit was pending. Travelers also appeals the postjudgment order granting Adir's motion for attorney fees, contending attorney fees were not authorized.

We affirm the order and judgment denying Travelers's petition. The exclusive concurrent jurisdiction doctrine does not apply in this context to proceedings pending before the trial court and an administrative agency; and, in any event, it was reasonable and consistent with the primary jurisdiction doctrine for the trial court to defer to the Commissioner's determination of the validity of the agreement at issue. In addition, because Adir's administrative claim fell within the agreement's attorney fee provision, we affirm the postjudgment order awarding Adir attorney fees.

2

## FACTUAL AND PROCEDURAL BACKGROUND

### 1. *The Workers' Compensation Insurance Policies*

Adir operates the Curacao chain of retail department stores. Between 2004 to 2011 Travelers issued Adir annual guaranteed cost workers' compensation insurance policies. Each policy was filed with the Workers Compensation Rating Bureau (WCRB) pursuant to Insurance Code section 11658[1] and specified the rates to be charged to Adir. In addition, each policy included a general purpose endorsement, stating "the insured and the insurer have mutually agreed to a large risk alternative rating option retrospective rating plan."

Unlike the policies, which contained a fixed premium for the policy period, the alternative rating option retrospective rating plan provided for an adjustment of the premium after the policy period ended based on losses suffered during the policy period. The endorsement did not set forth the method for

---

[1] Insurance Code section 11658 provides in part, "(a) A workers' compensation insurance policy or endorsement shall not be issued by an insurer to any person in this state unless the insurer files a copy of the form or endorsement with the [WCRB] pursuant to subdivision (e) of Section 11750.3 and 30 days have expired from the date the form or endorsement is received by the commissioner from the rating organization without notice from the commissioner, unless the commissioner gives written approval of the form or endorsement prior to that time. [¶] (b) If the commissioner notifies the insurer that the filed form or endorsement does not comply with the requirements of law, specifying the reasons for his or her opinion, it is unlawful for the insurer to issue any policy or endorsement in that form."

Undesignated statutory references are to the Insurance Code except in part 4 of the Discussion.

premium calculation, definitions, terms, rates or the parties' obligations under the alternative rating option. Those provisions were contained in a separate side agreement that also included an arbitration provision. Unlike the guaranteed cost policies, the side agreements were not filed with the WCRB for review by the Commissioner.

In 2012 Adir did not renew its workers' compensation insurance with Travelers and refused to pay Travelers' post-policy period adjusted premiums as required by the side agreements.

2. *Travelers' Arbitration Request; Adir's Lawsuit*

After negotiations to recover premiums Adir owned under the large risk alternative rating plan failed, Travelers in 2014 served Adir with an arbitration demand. In response Adir filed an action in Los Angeles County Superior Court (L.A.S.C. No. BC575513) against Travelers and its insurance broker, Grosslight Insurance, asserting claims for breach of contract, tortious breach of the implied covenant of good faith and fair dealing and fraud, primarily alleging Travelers had engaged in improper claims-handling and settlement practices that increased Travelers' costs of administering claims and, in turn, the amount of Adir's retrospective premiums. Adir's complaint also included a claim for declaratory relief, seeking a judicial determination the side agreements, in particular the arbitration provision, were void because they had not been filed with the WCRB as required by sections 11658 and 11735.[2]

---

[2] Section 11735 provides in part, "(a) Every insurer shall file with the commissioner all rates and supplementary rate information that are to be used in this state. . . . [¶] (b) Rates

4

Shortly after filing the lawsuit Adir asked the trial court to declare the arbitration agreement unenforceable.[3] The court denied the motion, ruling the enforceability of the arbitration provision in the side agreements was a matter for the arbitrator. The court stayed Adir's action and ordered the matter to arbitration.

What happened next in both the arbitration proceeding and the trial court is detailed in our nonpublished opinion *Adir International, LLC v. The Travelers Indemnity Co.* (Dec. 30, 2020, B293415). In brief, the arbitration panel found the arbitration provision was severable from the side agreement, did not constitute an "endorsement" as defined in the Insurance Code and did not need to be filed with the WCRB to be enforceable. Following a hearing the arbitration panel also found the side agreements did not violate sections 11658 or 11735. However, before the arbitration panel could issue its final award, the trial court in June 2018 agreed to hear Adir's renewed motion to declare the arbitration agreement unenforceable. Citing a then-recent court of appeal decision (*Nielsen Contracting, Inc. v. Applied Underwriters, Inc.* (2018) 22 Cal.App.5th 1096) and a precedential ruling from the Commissioner (*Matter of Shasta Linen Supply, Inc.* (June 20, 2016) Cal. Insurance Commissioner, No. AHB-WCA-14-31) (*Matter of Shasta Linen*)) that arbitration agreements must be filed with the WCRB to comply with

filed pursuant to this section shall be filed in the form and manner prescribed by the commissioner."

[3] We refer to the "trial court" when discussing Adir's lawsuit to distinguish it from the "superior court," which heard Travelers' petition for writ of administrative mandate.

sections 11658 and 11735, the court reconsidered its earlier ruling and found the arbitration agreement void and unenforceable. We affirmed the trial court's order reconsidering its prior ruling and denying arbitration of Adir's lawsuit. (*Adir International, supra,* B293415 [pp. 18-20].)

3. *Adir's Administrative Complaint*

While the arbitration was pending, Adir on February 17, 2016 filed with Travelers a request for action under the policy's dispute resolution provision, which allowed the insured to challenge Travelers' interpretation and application of specified aspects of the policy and, if dissatisfied with Travelers' resolution, to seek review before the Department of Insurance. Travelers denied Adir's complaint and request for action.

Adir on April 22, 2016 filed an administrative appeal (and on June 2, 2016 a supplemental appeal) with the Department of Insurance pursuant to section 11737, subdivision (f), which authorizes a person aggrieved by application of a rating system to appeal to the Commissioner.[4] Adir contended the side agreements constituted an "unfiled rating plan" in violation of sections 16358 and 11735. According to Adir, by relying on the

---

[4] Section 11737, subdivision (f), provides, "Every insurer or rating organization shall provide within this state a reasonable means whereby any person aggrieved by the application of its filings may be heard by the insurer or rating organization on written request to review the manner in which the rating system has been applied in connection with the insurance afforded or offered." If the insurer or rating organization rejects the grievance, the party aggrieved "may appeal . . . to the commissioner," who, after holding a noticed hearing, "may affirm, modify, or reverse" that action by the insurer.

6

invalid side agreement to calculate premiums, Travelers had misapplied its rating system to Adir.

In response Travelers petitioned for a writ of prohibition in the pending trial court action requesting the court stay the administrative hearing while the lawsuit was pending. The court denied the petition.

At the administrative hearing Travelers, relying on the doctrine of exclusive concurrent jurisdiction, argued the Commissioner lacked jurisdiction to consider the merits of Adir's administrative complaint under section 11737, subdivision (f), while the action in the trial court was still pending. The Commissioner rejected that argument, concluding the Department of Insurance had "exclusive jurisdiction [pursuant to section 11737, subdivision (f)], to adjudicate [Adir]'s claim that Travelers' unfiled Side Agreements misapplied Travelers' filed rating plan by violating Insurance Code sections 11658 and 11735, as well as California Code of Regulations, title 10, section 2268."[5] On the merits the Commissioner ruled Travelers' side agreements were void because they had not been filed with the WCRB as required and constituted a misapplication of Travelers' filed rating plan in violation of sections 11658 and 11735.

---

[5] California Code of Regulations, title 10, section 2268, provides, "(a) An insurer shall not use any policy form, endorsement form, or ancillary agreement unless attached to and made a part of the policy. . . . [¶] (b) An insurer shall not use a policy form, endorsement form, or ancillary agreement except those filed and approved by the Commissioner in accordance with these regulations."

4. *Travelers' Petition for Writ of Administrative Mandate*

Travelers filed a petition for a writ of administrative mandate challenging the Commissioner's decision. The superior court denied Travelers' petition, rejecting Travelers' contention the Commissioner lacked jurisdiction to consider Adir's administrative complaint while the trial court action, which included a claim for declaratory relief invalidating the side agreements, was still pending. Like the Commissioner, the court also rejected Travelers' alternative jurisdictional argument that Adir's administrative complaint did not challenge a "rating system" and thus did not fall within the jurisdiction of the Commissioner under section 11737, subdivision (f).

5. *The Court's Postjudgment Fee Order*

Following entry of judgment denying Travelers' petition for writ of administrative mandate, Adir moved pursuant to an attorney fee provision in the side agreements and Civil Code section 1717 to recover its attorney fees as the prevailing party in the action. The court awarded Adir $321,338.54 in reasonable attorney fees incurred in the administrative hearing and this administrative mandamus action and rejected Adir's requests for additional attorney fees as the prevailing party on its declaratory relief claim in the trial court action. The court ruled any prevailing party determination in the trial court action was premature and not within the court's jurisdictional purview in any event. (Adir does not contest the propriety of that order.)

Travelers filed notices of appeal from both the judgment and the postjudgment attorney fee order. We ordered the appeals consolidated.

8

**DISCUSSION**

1. *Standard of Review*

Code of Civil Procedure section 1094.5 specifies the procedure for review of administrative orders and decisions. Subdivision (b) of that section provides the superior court's inquiry in administrative mandamus "shall extend to the questions whether the respondent [administrative entity] has proceeded without, or in excess of, jurisdiction; whether there was a fair trial; and whether there was any prejudicial abuse of discretion," which is established when the "the respondent has not proceeded in the manner required by law, the order or decision is not supported by the findings, or the findings are not supported by the evidence."

On appeal from the judgment on a petition for writ of administrative mandate in a case, as here, not involving fundamental vested rights,[6] we review the agency's findings, not the superior court's decision, for substantial evidence (*Sky Posters Inc. v. Department of Transportation* (2022) 78 Cal.App.5th 644, 660; *Doe v. University of Southern California* (2018) 28 Cal.App.5th 26, 34) and the agency's legal determinations de novo (*Sky Posters,* at p. 660; *Schmid v. City and County of San Francisco* (2021) 60 Cal.App.5th 470, 485; *Valero Refining Co.—California v. Bay Area Air Quality Management Dist. Hearing Bd.* (2020) 49 Cal.App.5th 618, 637). In conducting our de novo review, we accord "great weight and respect" to an administrative construction of a controlling statute. (*Boling v. Public Employment Relations Bd.* (2018) 5 Cal.5th 898, 911,

---

[6] Both Travelers and Adir acknowledge the issue presented does not involve a fundamental vested right.

[when an agency is interpreting a controlling statute or regulation, "[t]he appropriate mode of review . . . is one in which the judiciary, although taking ultimate responsibility for the construction of the statute, accords great weight and respect to the administrative construction," cleaned up]; *American Coatings Assn. v. South Coast Air Quality Management Dist.* (2012) 54 Cal.4th 446, 461-462 [same]; see *McHugh v. Protective Life Ins. Co.* (2021) 12 Cal.5th 213, 227 ["[w]e also extend some deference to [the Department of Insurance]'s interpretations of the Insurance Code, to the extent that those interpretations are embodied in quasi-legislative regulations or constitute long-standing, consistent, and contemporaneous interpretations"].)

2. *The Doctrine of Exclusive Concurrent Jurisdiction Does Not Apply; Even If the Court Erred, Travelers Has Not Demonstrated Any Prejudice*

Travelers contends the Commissioner acted in excess of his jurisdiction by deciding Adir's administrative appeal while Adir's trial court action was pending. Citing the rule of exclusive concurrent jurisdiction applicable between two judicial tribunals (see *Browne v. Superior Court* (1940) 16 Cal.2d 593, 597 ["where several courts have concurrent jurisdiction of a certain type of proceeding, the first one to assume and exercise such jurisdiction in a particular case acquires an exclusive jurisdiction"]; *Franklin & Franklin v. 7-Eleven Owners for Fair Franchising* (2000) 85 Cal.App.4th 1168, 1175 ["where two (or more) courts possess concurrent subject matter jurisdiction over a cause, the court that first asserts jurisdiction assumes it to the exclusion of all others, thus rendering 'concurrent' jurisdiction 'exclusive' with the first court"]), Travelers contends the trial court, the first tribunal to assume jurisdiction over the validity of the side agreements when

10

Adir filed its lawsuit seeking a declaration they were void, had concurrent, and thus priority, jurisdiction to consider the matter; and the Commissioner erred in concluding he had "exclusive jurisdiction" under section 11737, subdivision (f).

Travelers concedes on appeal, as it did in the arbitration,[7] the Commissioner has exclusive jurisdiction to consider "an appropriate" claim pursuant to section 11737, subdivision (f), that an insurer has misapplied its rating system to an insured. However, Travelers argues Adir's administrative complaint challenged the legal *validity* of a rating system, not its *application* to Adir. It is over that threshold issue—whether the side agreements containing the rating system Travelers applied to Adir constituted unfiled endorsements in violation of sections 11658 and 11735 and the governing regulation—that the trial court and the Commissioner enjoyed concurrent jurisdiction, Travelers argues. And, Travelers continues, the trial court's concurrent jurisdiction over that threshold issue became exclusive when, prior to the administrative appeal, it exercised its jurisdiction over Adir's lawsuit and ordered the matter to arbitration.

As a preliminary matter, there is some question whether by seeking arbitration of the claims alleged in Adir's lawsuit,

---

[7] During the arbitration Travelers told the arbitrators Adir had begun administrative proceedings under section 11737, subdivision (f). When the arbitration panel suggested Travelers could not contract out of Adir's right to pursue statutorily authorized administrative proceedings, Travelers acknowledged the Commissioner had jurisdiction to consider Adir's section 11737, subdivision (f), claim: "[Adir's c]ounsel is correct that Travelers cannot avoid and does not seek to avoid the regulatory process of California."

including for declaratory relief, Travelers forfeited any argument the trial court was the proper tribunal to consider the question of the validity of the agreements. Had the arbitration proceeded to a final award, the court's jurisdiction would have been limited to vacating or confirming the award without deciding the legal question of the validity of the side agreements.[8]

There is also some doubt whether the rule of exclusive concurrent jurisdiction applies here. The "judge-made rule" of exclusive concurrent jurisdiction "is based upon the public policies of avoiding conflicts that might arise between courts if they were free to make contradictory decisions or awards relating to the same controversy and preventing vexatious litigation and multiplicity of suits. [Citation.] The rule is 'a judicial rule of priority or preference and is not jurisdictional in the traditional sense of the word,' in that it 'does not divest a court, which otherwise had jurisdiction of an action, of jurisdiction.' [Citation.] Because it is a policy rule, application of the rule depends upon the balancing of countervailing policies." (*Shaw v. Superior*

---

[8] Once a petition to compel arbitration is granted and the lawsuit stayed, "'the action at law sits in the twilight zone of abatement with the trial court retaining merely vestigial jurisdiction over matters submitted to arbitration.' [Citation.] During that time, under its 'vestigial' jurisdiction, a court may: appoint arbitrators if the method selected by the parties fails (§ 1281.6); grant a provisional remedy 'but only upon the ground that the award to which an applicant may be entitled may be rendered ineffectual without provisional relief' (§ 1281.8, subd. (b)); and confirm, correct or vacate the arbitration award (§ 1285)." (*Titan/Value Equities Group, Inc. v. Superior Court* (1994) 29 Cal.App.4th 482, 487-488; accord, *Optimal Markets, Inc. v. Salant* (2013) 221 Cal.App.4th 912, 923-924.)

*Court* (2022) 78 Cal.App.5th 245, 255-256; accord, *BBBB Bonding Corp. v. Caldwell* (2021) 73 Cal.App.5th 349, 374.)

Here, the two tribunals at issue are not two courts of general jurisdiction but a court and a state agency. Relying on *Scott v. Industrial Accident Commission* (1956) 46 Cal.2d 76 (*Scott*) and other workers' compensation cases, Travelers contends the doctrine is equally applicable in this context.

In *Scott* the plaintiff filed a lawsuit for personal injuries. While that lawsuit was pending, the plaintiff also filed a claim before the Industrial Accident Commission (the precursor to the Workers' Compensation Appeals Board) for the same injury. The defendant sought a writ of prohibition to "suspend" the administrative action until the superior court action was final. At issue in both actions was whether the plaintiff had suffered the injuries in the course and scope of his employment. If he did, workers' compensation provided the exclusive remedy, and the trial court lacked jurisdiction over the claim. If not, the court had jurisdiction, and the Industrial Accident Commission did not. (*Scott, supra*, 46 Cal.2d at pp. 80-81.) The question presented to the *Scott* Court was which tribunal had priority to determine that threshold jurisdictional issue.

The Supreme Court began by recognizing—as Travelers does not—the question was not one of exclusive concurrent jurisdiction because it involved a court of general jurisdiction and an agency of limited jurisdiction, with the jurisdiction of the two tribunals exclusive of each other. (See *Scott, supra*, 46 Cal.2d at p. 81 ["[t]he issue is not one of simultaneous exercise of general concurrent jurisdiction; it is rather, the right of proceeding simultaneously in two tribunals, the jurisdiction of which is essentially exclusive of the other, but each of which has

13

the power to make a determination of jurisdiction which, when final, will be conclusive upon the other"].)  Nonetheless, in determining which tribunal, the trial court or the Industrial Accident Commission, had "jurisdiction to determine jurisdiction," the Court held it made most sense to apply "the general rule long recognized as governing tribunals whose jurisdiction is generally concurrent."  (*Id.* at p. 89 [the first court to assume jurisdiction has priority jurisdiction]; accord, *Hollingsworth v. Superior Court* (2019) 37 Cal.App.5th 927, 929-930 ["[t]he Supreme Court has made clear [in *Scott*] that when a civil action and a workers' compensation proceeding are concurrently pending, 'the tribunal first assuming jurisdiction' should determine exclusive jurisdiction"].)

Travelers asserts there is no reason to limit *Scott's* ruling to the workers' compensation context and the peculiar circumstance that the only concurrent jurisdiction shared by the trial court and the agency is the authority to determine which tribunal has exclusive jurisdiction over the controversy.  Since the trial court and the Commissioner enjoyed concurrent jurisdiction over the threshold issue of the validity of the side agreements, Travelers contends, the trial court should have priority to consider that issue.  In seeking an alternative forum following an adverse ruling in the trial court (the order granting Travelers' petition for arbitration), Travelers continues, Adir engaged in precisely the type of forum shopping the doctrine of exclusive concurrent jurisdiction is intended to forestall.  Travelers offers no authority for this extension of the *Scott* analysis to other situations involving actions pending before an agency and the trial court.

Moreover, Travelers acknowledged the Commissioner had exclusive jurisdiction to consider a "proper" section 11737,

14

subdivision (f), claim.[9]  If the trial court lacked jurisdiction to consider the section 11737, subdivision (f), claim, it was not forum shopping for Adir to bring that claim before the Commissioner.

More fundamentally, even if Travelers were correct that the trial court could have required the Commissioner to defer further action while it considered the validity of the side agreements as part of Adir's lawsuit, nothing precluded the court from invoking the doctrine of primary jurisdiction to allow the Commissioner to decide the validity of the side agreements in the first instance.  (See *Farmers Ins. Exchange v. Superior Court* (1992) 2 Cal.4th 377, 390-391 (*Farmers*) [the concept of primary jurisdiction applies when both the court and a state agency have concurrent jurisdiction; primary jurisdiction applies "where a claim is originally cognizable in the courts, and comes into play whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body; in such a case the judicial process is suspended pending referral of such issues to the administrative body for its views," italics and internal quotation marks omitted]; see *Villanueva v. Fidelity National Title Co.* (2021) 11 Cal.5th 104, 126, fn. 12 [under the doctrine of primary jurisdiction, "an initial suit in court is permitted, although the trial court may thereafter choose to stay the action and solicit the agency's views"]; *Jonathan Neil & Assoc., Inc. v. Jones* (2004) 33 Cal.4th 917, 931-932 [same].)

---

[9]  Travelers' argument in the alternative that the Commissioner lacked jurisdiction to consider any aspect of Adir's administrative complaint is addressed in section 3.

15

"[T]he primary jurisdiction doctrine advances two related policies: it enhances court decisionmaking and efficiency by allowing courts to take advantage of administrative expertise, and it helps assure uniform application of regulatory laws. [Citations.] [¶] No rigid formula exists for applying the primary jurisdiction doctrine. [Citation.] Instead, resolution generally hinges on a court's determination of the extent to which the policies noted above are implicated in a given case. [Citation.] This discretionary approach leaves courts with considerable flexibility to avoid application of the doctrine in appropriate situations, as required by the interests of justice." (*Farmers, supra,* 2 Cal.4th at pp. 391-392, fns. omitted; see *id.* at p. 397 ["questions involving insurance rate making" pose issues involving agency expertise; "[i]t is readily apparent that a court would benefit immensely, and uniformity of decisions would be greatly enhanced, by having an expert administrative analysis available before attempting to grapple with such a potentially broad-ranging and technical question of insurance law"].)

Travelers acknowledges the trial court may well have had discretion under the doctrine of primary jurisdiction to stay the contract action pending the Commissioner's ruling on the section 11737, subdivision (f), claim, and defer to the Commissioner the threshold question whether the side agreements were enforceable; but that decision, Travelers argues, belonged to the trial court in the first instance. The trial court presiding over Adir's lawsuit never made that decision, nor should it have, Travelers asserts, because no particular expertise was needed to determine whether the governing statutes required the side agreements to be filed with the WCRB to be valid and enforceable. (Cf. *Farmers, supra,* 2 Cal.4th at p. 396.)

16

Adir responds that, in denying Travelers' petition for a writ of prohibition to stay the administrative action while the action in the trial court was pending, the trial court effectively deferred to the expertise of the Commissioner to decide the threshold question whether the side agreements needed to be filed with the WCRB.

Whether the trial court impliedly invoked the primary jurisdiction doctrine when it denied Travelers' request for a writ of prohibition is far from clear. Significantly, neither Travelers' petition for a writ of prohibition nor the trial court's order denying the petition is included in the record on appeal. During the administrative mandamus action, Travelers attributed the trial court's denial of its petition for a writ of prohibition to a procedural defect—the petition was not verified—an explanation the superior court in the mandamus action observed had been offered "without citation to record evidence." The absence of a clear record supports a ruling against Travelers on the point. (See *Jameson v. Desta* (2018) 5 Cal.5th 594, 609 ["[the appellant] has the burden of providing an adequate record[; f]ailure to provide an adequate record on an issue requires that the issue be resolved against [the appellant]"].)

Moreover, contrary to Travelers' argument, it would have been quite reasonable for the trial court to have intended to defer to the Commissioner's determination of the validity of Travelers' side agreements and, for that reason, to have denied the petition for writ of prohibition. The Commissioner's precedential decision affected all Travelers policy holders with unfiled side agreements, creating the very uniformity of decision for Travelers' insureds that the primary jurisdiction doctrine is intended to ensure. (See *Jonathan Neil & Assoc., Inc. v. Jones*, *supra,* 33 Cal.4th at

17

pp. 932-933 ["'considerations of judicial economy, and concerns for uniformity in application of the complex insurance regulations here involved, strongly militate in favor of a stay to await action by the Insurance Commissioner in the present case'"]; *Farmers, supra,* 2 Cal.4th at p. 396.)

Finally, even under Travelers' own theory of exclusive concurrent jurisdiction, error by the superior court is reversible only where the error results in a miscarriage of justice or prejudice to the party asserting the rule. (Cal. Const., art. VI, § 13; *People ex rel. Garamendi v. American Autoplan, Inc.* (1993) 20 Cal.App.4th 760, 772 (*Garamendi*).) As the *Garamendi* court characterized the question when addressing the effect of the court's alleged error in its application of the doctrine of exclusive concurrent jurisdiction, "'Is it too late to lock the stable now that the horse has been stolen?'" (*Garamendi,* at p. 772.) "'[What] purpose would be served by reversing the judgment entered in this case and remanding the case so that the litigation can proceed in an orderly manner with priority in the [court which had priority jurisdiction[?]] If there are no errors in this record, and the evidence compels the result which has been obtained, such a reversal would appear frivolous.'" (*Id.* at pp. 772-773.)

Travelers has not identified, let alone demonstrated, any prejudice from the Commissioner's exercise of his jurisdiction to consider Adir's administrative claim. To the contrary, Travelers concedes, as it did in the arbitration proceeding, the Commissioner has exclusive jurisdiction over a "proper" section 11737 claim and asserts Adir may still bring its claim before the Commissioner after resolution of the trial court action, at which time the court's determination, under principles of issue preclusion, would govern the issue of the validity of the side

18

agreements.  In essence, Travelers argues prejudice exists because the court would have decided the issue differently, not because of any identified unfairness in the administrative proceedings.  Quite apart from whether our holding in *Adir International, LLC v. The Travelers Indemnity Co., supra*, B293415, and the application of the law of the case doctrine effectively foreclosed any possibility that Travelers could prevail on that issue in the trial court, the potential for a different outcome, alone, is not prejudice given the nature of the error asserted here.  (See *Garamendi, supra*, 20 Cal.App.4th at p. 775.)

3. *Travelers' Argument in the Alternative the Commissioner Lacked Jurisdiction To Consider Adir's Section 11737 Claim At All Is Also Without Merit*

Travelers argues in the alternative that the Commissioner did not have jurisdiction at all, concurrent or otherwise, to decide Adir's administrative claim under section 11737, subdivision (f).  According to this argument, Adir's administrative complaint, at its heart, is a dispute over the legal validity of a contract, not the particular application of Travelers' rating system, and thus outside both the purpose and jurisdictional purview of section 11737, subdivision (f).  To reinforce this point, Travelers emphasizes that subdivision (a) of section 11737 authorizes the Commissioner to "disapprove a rate if the insurer fails to comply with the filing requirements under Section 11735."  In other words, Travelers argues, its failure to comply with the filing requirements may result in an enforcement action by the Commissioner, but not an administrative claim by the insured.

As the Commissioner observed when he rejected this argument, Adir's complaint specifically alleged Travelers was not using the rating system on file with the WCRB but a wholly

19

separate rating system that had not been approved, resulting in a misapplication of the rating system to Adir. The Commissioner found such an argument fell squarely within the jurisdiction of the Department of Insurance under section 11737, subdivision (f), as the Commissioner had previously concluded in his precedential decision *Matter of Shasta Linen*. Subdivision (a) of section 11737 does not undermine that analysis. To the contrary, as the Commissioner's decision explains, subdivisions (a) through (e) reflect the Legislature's decision to vest the Commissioner with the authority to bring an enforcement action. Subdivision (f), in contrast, affords an insured aggrieved by the misapplication of the insured's rating system the ability to appeal that decision to the Commissioner, who acts in that capacity not as an enforcer, but as an adjudicator of the claim. Nothing in section 11737, subdivision (a), supports Travelers' dubious (and in light of its statements at the arbitration, seemingly disingenuous) assertions the Commissioner had no authority to hear Adir's administrative claim.

4. *The Court Did Not Err in Granting in Part Adir's Postjudgment Motion for Attorney Fees*

The side agreements that Adir challenged in the administrative hearing, and which the Commissioner ruled were not enforceable, contained an attorney fee clause that provided, "Within five (5) days of our demand, you shall reimburse us for any and all costs and expenses, including, but not limited to, attorneys' fees incurred by us in connection with the collection or enforcement of any of your Obligations to us." "Obligation" is defined in the side agreements as "any indebtedness or liability of any kind owed by [Adir] to [Travelers]."

Although the agreement by its terms limits recovery of attorney fees to Travelers, Civil Code section 1717 (section 1717), when applicable, makes a fee provision reciprocal:  "(a) In any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to other costs."  This reciprocal mandate was adopted by the Legislature to "'establish mutuality of remedy where [a] contractual provision makes recovery of attorney's fees available for one party, . . . and to prevent oppressive use of one-sided attorney's fees provisions.'"  (*Tract 19051 Homeowners Assn. v. Kemp* (2015) 60 Cal.4th 1135, 1146; accord, *Eden Township Healthcare Dist. v. Eden Medical Center* (2013) 220 Cal.App.4th 418, 429 (*Eden Township*).)

The court ruled Adir, as the prevailing party in the administrative mandamus action, was entitled to its reasonable attorney fees incurred in this action, including at the administrative hearing.  Travelers contends attorney fees were beyond the scope of the side agreements and, in any event, were not authorized by section 1717 because Adir, whose lawsuit is still pending in the trial court, is not the prevailing party in an action "on a contract," and neither the administrative mandate hearing nor the administrative hearing before the Department of Insurance was an "action" within the meaning of section 1717.  None of these arguments has merit.

21

a. *The attorney fee order was within the scope of the attorney fee authorization in the side agreement*

"'Before section 1717 comes into play, it is necessary to determine whether the parties entered an agreement for the payment of attorney fees and, if so, the scope of the attorney fee agreement.'" (*Mountain Air Enterprises, LLC v. Sundowner Towers, LLC* (2017) 3 Cal.5th 744, 752 (*Mountain Air*); accord, *Santisas v. Goodin* (1998) 17 Cal.4th 599, 608.)  In determining the scope of an attorney fee provision, the rules of contract interpretation apply:  We interpret the words of the contract in their "'ordinary and popular sense,' unless 'used by the parties in a technical sense or a special meaning is given to them by usage.'" (*Mountain Air*, at p. 752; see Civ. Code, §§ 1638, 1644, 1647.)  If the action is outside the scope of the attorney fee provision, that is the end of the matter; section 1717 does not apply.  (*Mountain Air*, at p. 752.)

Relying on *Mountain Air, supra,* 3 Cal.5th 744, Travelers contends the scope of the attorney fee provision in the side agreements is expressly limited to the "enforcement of Adir's obligations to Travelers."  Because the administrative proceeding Adir initiated was not an action by Travelers to enforce Adir's obligations under the side agreements, Travelers argues, Travelers could not have recovered its attorney fees had it prevailed on Adir's administrative claim, and neither can Adir.

In *Mountain Air, supra,* 3 Cal.5th 744 the seller brought an action against prospective purchasers for breach of a repurchase agreement.  The prospective purchasers asserted in defense that a subsequent option agreement had created a novation of the initial repurchase agreement, granting them the right, but not the obligation, to purchase the property.  The prospective

22

purchasers prevailed at trial and moved to recover their attorney fees based on a provision in the option agreement that authorized attorney fees and costs to the prevailing party in any legal action or proceeding "'brought for the enforcement of this Agreement or because of an alleged dispute, breach, default, or misrepresentation in connection with any provision of this Agreement.'" (*Id.* at p. 752, italics omitted.) At issue was whether the prospective purchasers' affirmative defense to the enforcement of the repurchase agreement—that a separate option agreement had created a novation of the repurchase agreement—constituted an action or proceeding "brought" to enforce the option agreement. The sellers argued, and the Court agreed, the assertion of the option contract as a defense in an action to enforce a separate contract was not synonymous with "'bringing an "action" or "proceeding"'" to enforce the option agreement. (See *id.* at pp. 753, 755-756.)[10]

According to Travelers, Adir's administrative claim that the side agreements were not enforceable was akin to the affirmative defense the prospective purchasers asserted in *Mountain Air*. That is, Travelers did not bring an enforcement action. (Had it done so, and lost, Travelers admits, it would be responsible for

---

[10] The *Mountain Air* Court held, however, the sellers did bring the action because of an alleged dispute in connection with the repurchase agreement, an alternative basis for attorney fees in the option agreement. Because the option agreement was properly construed together with the repurchase agreement as one agreement, the Court held the sellers would have been entitled to their attorney fees had they prevailed. (*Mountain Air, supra,* 3 Cal.5th at pp. 759-760.)

attorney fees.)  Rather, Adir raised an affirmative claim that the side agreements were not enforceable.

Travelers' reliance on *Mountain Air* is misplaced.  The *Mountain Air* Court held an affirmative defense that relied on an option contract distinct from the repurchase agreement the sellers had sought to enforce in the action was not, in itself, an "action or proceeding" to enforce the option contract.  That is a very different matter from what occurred here.  The language of the side agreements authorized attorney fees in connection with Travelers' enforcement of Adir's obligations under the very contracts Adir argued were illegal and void.  Had Travelers prevailed on Adir's administrative claim, Travelers would have been entitled to recover its attorney fees despite the absence of an affirmative enforcement claim.  (See *Eden Township, supra,* 220 Cal.App.4th at pp. 425, 430 [in an action in which complaining party unsuccessfully asserts that the underlying contract is illegal and invalid, the party who successfully defends on the ground the contract is valid may recover its attorney fees, "regardless of whether the [party] previously had asserted its own affirmative claim to enforce the contract"]; accord, *California-American Water Co. v. Marina Coast Water Dist.* (2017) 18 Cal.App.5th 571, 577-578 [same, citing *Eden Township*].)  Accordingly, so too is Adir.

b.  *The mandamus action was "on the contract"*

Travelers' related contention the reciprocal mandate of section 1717 does not apply because the administrative complaint involved a matter of statutory interpretation (whether the side agreements were endorsements that were required to be filed under various Insurance Code provisions) and thus was not an action "on a contract" (see § 1717) is also without merit.  As

discussed, Adir successfully obtained an administrative ruling and then a judgment in the mandamus action that its contractual obligations under the side agreements were unenforceable.  That is unquestionably an action "on a contract."  (See *California-American Water Co. v. Marina Coast Water Dist., supra,* 18 Cal.App.5th at p. 576 [a complaint alleging a contract is void under Government Code section 1090 is an action "on a contract" for purposes of section 1717 regardless of whether contract claims are alleged]; *Eden Township*, *supra*, 220 Cal.App.4th at p. 427 ["it is difficult to think of an action that is more likely to be characterized as an 'action on a contract' than one in which the party bringing the action explicitly seeks to have the subject contract declared void and invalid in its entirety"]; see generally *Hsu v. Abbara* (1995) 9 Cal.4th 863, 870 ["[i]t is now settled [law] that a party is entitled to attorney fees under section 1717 'even when the party prevails on grounds the contract is inapplicable, invalid, unenforceable or nonexistent, if the other party would have been entitled to attorney's fees had it prevailed'"].)

     c.   *Adir was the prevailing party in the administrative mandamus action*

Relying on *DisputeSuite.com, LLC v. Scoreinc.com* (2017) 2 Cal.5th 968 (*DisputeSuite*), Travelers contends in the alternative that any award of attorney fees in this mandamus action was premature because Adir's trial court action, including its claim for declaratory relief regarding the validity of the side agreements, is still pending, making Adir's victory in the administrative action an interim one.  In *DisputeSuite* the Supreme Court considered whether a defendant was entitled to an award of attorney fees pursuant section 1717 after obtaining a dismissal of the plaintiff's contract action because the parties'

25

agreement contained a forum selection clause specifying the courts of another jurisdiction. The trial court concluded there was not yet a prevailing party. The *DisputeSuite* Court affirmed that decision, holding the defendant's victory in moving the litigation to Florida did not make it the prevailing party as a matter of law, and the trial court had acted within its discretion in denying the motion for attorney fees: "Considering that the action had already been refiled in the chosen jurisdiction and the parties' substantive disputes remained unresolved, the [trial] court could reasonably conclude neither party had yet achieved its litigation objectives to an extent warranting an award of fees." (*Id.* at p. 971; see *Hsu v. Abbara, supra,* 9 Cal.4th at p. 876 [prevailing party determination is to be made by comparing the parties' relative degrees of success "upon final resolution of the contract claims"].)

*DisputeSuite* does not assist Travelers. Adir's success before the Commissioner and in the administrative mandamus proceeding constitutes a final determination on the merits of its challenge to the validity of the side agreements, not simply a procedural victory in an ongoing lawsuit, as was the case in *DisputeSuite*. That litigation is complete, and Adir is unquestionably the prevailing party.

Travelers next contends the court erred when it ignored Adir's "obvious forum shopping" and determined it "was not inequitable" to apply section 1717's reciprocal mandate and award Adir attorney fees. That argument, too, is without merit. As the Supreme Court has explained, while there are certainly occasions when the court must balance the equities in determining whether a party has prevailed (see *Hsu v. Abbara, supra,* 9 Cal.4th at p. 877 ["[w]e agree that *in determining*

*litigation success*, courts should respect substance rather than form, and to this extent should be guided by 'equitable considerations'"]), "when one party obtains a 'simple, unqualified win,'" "the trial court may not invoke equitable considerations unrelated to litigation success," except as expressly authorized by statute.  (*Ibid.*)  To consider the equities unrelated to litigation success "would convert the attorney fees motion from a relatively uncomplicated evaluation of the parties' comparative litigation success into a formless, limitless attack on the ethics and character of every party who seeks attorney fees under section 1717.  We find no evidence that the Legislature intended that the prevailing party determination be made in this way."  (*Hsu,* at p. 877.)  Because it would have been improper to deny Adir attorney fees based on equitable considerations unrelated to litigation success, the court's no-inequity finding is immaterial.

Finally, citing no legal authority, Travelers contends, at the very least, the award of attorney fees should be reduced to exclude fees incurred by Adir in prosecuting the administrative proceeding in the Department of Insurance, which it contends was not "an action" within the meaning of section 1717.  As discussed, under the broad scope of the attorney fee provision in the side agreements, Travelers would have been entitled to its fees had it prevailed in the administrative proceeding as "fees incurred by us in connection with the collection or enforcement" of Adir's contractual obligations.  We have no difficulty concluding section 1717's reciprocal fee mandate regarding fees incurred "in an action" on a contract applies equally to the fees incurred by Adir in the administrative proceeding giving rise to the mandamus action.  (Cf. *Edna Valley Watch v. County of San Luis Obispo* (2011) 197 Cal.App.4th 1312, 1319 [in Code of

27

Civil Procedure section 1021.5's authorization of attorney fees to a successful party "in any action" that results in the enforcement of an important right affecting the public interest, the term "action" includes not simply the mandamus proceeding but also the administrative proceeding giving rise to it]; see generally *Santisas v. Goodin, supra,* 17 Cal.4th at p. 610 ["[t]he primary purpose of section 1717 is to ensure mutuality of remedy for attorney fee claims under contractual attorney fee provisions"].)

## DISPOSITION

The judgment and postjudgment order are affirmed. Adir is to recover its costs on appeal.


PERLUSS, P. J.

We concur:



SEGAL J.



FEUER, J.